IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 11 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ARCHIE KOWALIK and | § | |
| MARTHA KOWALIK | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | Case No. B-01-180 |
| v. | § | |
| | § | |
| ABLE SUPPLY COMPANY et al. | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| IN RE: | § | Case No. 01-10578 |
| FEDERAL-MOGUL GLOBAL, INC. | § | Chapter 11 |
| Debtor | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| | § | District of Delaware) |

PLAINTIFFS' MOTION FOR REMAND FOR
LACK OF SUBJECT MATTER JURISDICTION, FOR MANDATORY
ABSTENTION, OR FOR DISCRETIONARY ABSTENTION
OR EQUITABLE REMAND

Come now plaintiffs and file this their motion for remand for lack of subject

matter jurisdiction, for mandatory abstention, or for discretionary abstention or equitable

remand, and in support thereof would respectfully show as follows:

INTRODUCTION AND FACTUAL BACKGROUND

This is a wrongful death claim originally filed as a personal injury action in state

court in Cameron County, Texas. Archie Kowalik suffered from asbestos-related lung

cancer. After a long battle with this disease, Mr. Kowalik died on June 2, 2000.

Pursuing this action is Mr. Kowalik's spouse, Martha Kowalik.

1

This case was originally filed in Cameron County, Texas; discovery in this state court was proceeding and the plaintiffs were awaiting a trial setting. The present removal is a transparent attempt to delay the progress of this action.

One of the defendants sued by plaintiffs was Gasket Holding Inc., as successor-in-interest to Flexitallic ("Flexitallic"), a subsidiary of Federal Mogul Corporation ("Federal Mogul Corp"). On October 1, 2001, Federal Mogul filed a bankruptcy petition in the Bankruptcy Court for the District of Delaware. On October 22, 2001, plaintiffs nonsuited Flexitallic from the state court action (*See* nonsuit attached as Exhibit A). Unbeknownst to plaintiffs, however, Garlock had filed a notice of removal on that same day, October 22, 2001.

The removal was one of over 80 notices of removal filed by Garlock on Friday, October 19 or shortly thereafter, in federal courts across Texas. Each of the cases involves claims for asbestos-related injuries or death by plaintiffs represented by the firm of Water & Kraus, LLP, the undersigned plaintiffs' counsel. Although Garlock is a defendant in tens of thousands of asbestos cases across the country, including thousands of cases in Texas, and although the same asserted basis for removal would exist in every such case, Garlock did not remove any other cases. Instead, only the claims of persons represented by Waters & Kraus, LLP, were removed. (*See* affidavit of Charles Siegel, attached as Exhibit B).

For the reasons detailed below, this case should be summarily remanded to the state court from which it was removed, so that Mrs. Kowalik may resume discovery and proceed to trial. First, the Court lacks any basis for subject matter jurisdiction in this case. Second, even if jurisdiction existed, the doctrine of mandatory abstention would

2

require that the Court decline to exercise it.   Finally, the doctrines of permissive
abstention and equitable remand also compel remand to state court.

## ARGUMENT AND AUTHORITIES

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
      THIS REMOVED ACTION

Garlock's notice of removal is unclear as to the asserted factual basis for
jurisdiction.  It does state, however, that removal is premised on 28 U.S.C. §1452, which
affords removal "if [the] district court has jurisdiction" of a claim under 28 U.S.C. §1334,
the general grant of bankruptcy jurisdiction.    Without bankruptcy subject matter
jurisdiction, then, the case must be remanded.   The general federal removal statute
likewise provides that if "it appears that the district court lacks subject matter jurisdiction,
the case shall be remanded." 28 U.S.C. §1447(c).

The only asserted basis for jurisdiction, then, is the grant of jurisdiction over
"bankruptcy cases and proceedings" set out in 28 U.S.C. §1334(a) and (b).  The notice of
removal is completely silent, however, as to how bankruptcy jurisdiction is implicated in
this case.  In fact, but for the way the case is captioned, we would not even know who the
debtor is asserted to be.

This failing alone is grounds for remand.  The notice of removal is "required" to
articulate a plausible way in which a bankruptcy estate is affected by prosecution of the
removed action.  McCratic v. Bristol-Meyers Squibb & Co., 183 B.R. 113 (N.D. Tex.
1995).  Much like the notice of removal here, the removal notice in McCratic stated only
that "as a result of debtor's bankruptcy, this Court has jurisdiction." Id. at 115.  The

court found this insufficient.  See also In re Emerald Acquisition Corp., 170 B.R. 632, 640 (Bankr. N.D. Ill. 1994).  Neither the Court nor plaintiffs should be required to guess at the basis for jurisdiction.

Since the way in which defendant invokes bankruptcy jurisdiction is not specified, plaintiffs will attempt to address the potential bases for such an assertion of jurisdiction. It must always be borne in mind that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute…which is not to be expanded by judicial decree.…It is to be presumed that a cause lies outside this limited jurisdiction…, and the burden of establishing the contrary rests upon the party asserting jurisdiction…" Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994) (citations omitted).  In a removed case, the removing party bears the burden of establishing a basis for jurisdiction.  Martineau v. ARCO Chem. Co., 203 F.3d 904, 910 (5th Cir. 2000).  All doubts "must be resolved against removal and in favor of remanding the case to state court."  Ta v. Neimes, 927 F.Supp. 977, 985 (W.D. Tex. 1996).

A.      The Debtor is Not a Real Party to this Case

The removal notice, again, asserts that there is bankruptcy jurisdiction under 28 U.S.C. §1334(a) and (b), but otherwise gives no clue as to why this is so.  The style of the notice of removal also includes a reference to "In re: Federal-Mogul Global, Inc., Debtor," a bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Delaware.  Federal-Mogul Global, Inc., however, is not, and never has been a party to this case.

Plaintiffs assume that Garlock's contention is that the presence of a different entity, Flexitallic as a party in the case confers bankruptcy jurisdiction here. Flexitallic is also bankrupt, and its reorganization is proceeding in the same bankruptcy case. But plaintiffs have given up any claims against Flexitallic.

As noted above, plaintiffs filed a nonsuit in state court on October 22, 2001, unaware that the case had been removed. In the event that the Court views the nonsuit as ineffective, because it was technically filed after removal, plaintiffs will also move for a severance of Flexitallic, and any claim against it.

Plaintiffs, therefore, assert no claim against Flexitallic in this case. At the time of removal, Garlock had never filed an actual cross-claim specifically against the debtor. Garlock's cross-claim against the debtor, if it exists at all, arises out of boiler-plate verbiage in a state court asbestos standing order deeming the existence of such claims upon the filing of its answer, or through a nonspecific paragraph in its answer alleging a cross-claim against all co-defendants. The debtor is not even mentioned in the cross-claim. Garlock had never sought contribution informally, had never conducted any discovery, and had never otherwise prosecuted its claim for contribution. The cross-claim which is the asserted basis of jurisdiction, then, exists, if at all, only in the most fictional, attenuated sense.

The Court should understand that this is entirely typical, for, in the hundreds of thousands of cases in which Garlock and Flexitallic have been co-defendants, Garlock has never actually sought contribution or indemnity from Flexitallic. According to Federal Mogul's chief national counsel for the last 16 years, Garlock and Federal Mogul have been co-defendants in approximately 250,000 cases, and Garlock has been a co-

5

defendant with Federal Mogul subsidiaries including Flexitallic, in several hundred thousand cases as well. Garlock has never demanded, let alone collected, one cent in contribution from any Federal Mogul entity. Garlock has never deposed a Federal Mogul witness and has never so much as propounded a single interrogatory to Federal Mogul or its subsidiaries. In fact, other than the imaginary cross-claims vaguely alluded to in answers or "deemed" to have been filed by all defendants against each other, through standing orders governing asbestos cases in certain jurisdictions, Garlock has never filed a single actual claim for contribution or indemnity specifically against a Federal Mogul entity. (*See* Affidavit of Jeffrey Simon, attached as Exhibit C).

In an asbestos case removed just this month on the same grounds, and summarily remanded the next day, the United States District Court for the Southern District of Mississippi refused to base jurisdiction upon "such immaterial and insubstantial cross-claims." In <u>Johnson v. ACandS, Inc.</u>, No. 1:01CV408GR (S.D. Miss., Oct. 3, 2001) (See order attached as Exhibit D), one defendant, U.S. Gypsum Co., declared bankruptcy on June 25, 2001. This defendant, along with another defendant named Flexitallic, Inc., were dismissed by plaintiffs on September 18, 2001. Flexitallic declared bankruptcy on October 1, 2001, and the remaining defendants removed the case the next day.

Upon plaintiffs' motion for remand, the Court first held that since claims for indemnity do not accrue until the indemnitee suffers loss, the cross-claims were "nonjusticiable" and thus "irrelevant:"

> From the outset, the Court notes that actions for indemnity do not accrue until the primary defendant sustains loss or is cast in judgment. See <u>Meloy v. Conoco, Inc.</u>, 817 F.2d, 275, 280 (5th Cir. 1987); <u>Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa</u>, 761 F. 2d 229, 235-36 (5th Cir. 1985); <u>Orient Mid-East Lines, Inc. v. A Shipment of Rice</u>, 496 F. 2d 1032, 1042 (5th Cir. 1974). "The allegations of the complaint against the

indemnitee are irrelevant to the indemnitor's obligation to pay." <u>Meloy</u>, 817 F. 2d at 280. In this instance, the defendants' cross-claims for contribution, like indemnity, are irrelevant as they are unripe for adjudication. Further, because there is no actual or imminent injury there is no standing. Consequently, the claims which form the basis for removal are nonjusticiable claims, and the Court must remand the case to the Circuit Court of Holmes County.

Id. at 2. The court next held that, notwithstanding the provision of the local standing order which deemed cross-claims to be filed, the order also deemed them to be severed. But even had they not been severed, the cross-claims could be "seen as constructively dismissed due to the fact that such claims shall mandatorily be dismissed, by no later than 30 days from September 18, 2001, the date the Order of Dismissal was filed …. The Court shall not condone removal based upon such immaterial and insubstantial cross-claims. The Court therefore finds that the defendants' cross-claims are moot." Id. at 3.

The same is true here. The cross-claim upon which jurisdiction is based is "immaterial and insubstantial," and should not form the means by which a non-bankrupt defendant can remove an otherwise unremovable case. This is simply a garden variety, state court asbestos case that involves no real claims against the debtor in question.

      B.      Even if a True Third Party Claim against the Debtor Existed in This Case, it would not Provide Bankruptcy Jurisdiction

Section 1334(a) provides for jurisdiction in cases "under Title 11." This category of cases, however, includes only "the bankruptcy petition itself." In re Wood, 825 F.2d 90, 92 (5th Cir. 1987). Section 1334(a) cannot, therefore, form a basis for jurisdiction in this case.

Subsection (b) provides for "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." This

case is not a matter "arising under Title 11," because it does not "involve a cause of action created or determined by a statutory provision of Title 11." <u>Wood</u>, supra at 96. Similarly, it is not a matter "arising in" a case under Title 11, because this is not a category of "'administrative' matters that arise only in bankruptcy cases." Id. at 97;  see also <u>WRT Creditors Liquidation Trust v. CIBC Oppenheimer Corp.</u>, 75 F.Supp.2d 596, 606 (S.D. Tex. 1999).

The only remaining possibility for jurisdiction is thus the notion that the removed claims -- plaintiffs' claims against non-debtor, unrelated parties -- are "related to" the debtor's bankruptcy proceedings.  It is firmly established, however, that independent state court claims against non-bankrupt defendants are not "related to" a separate debtor's bankruptcy, unless resolution of those claims has a measurable, tangible effect on the bankrupt estate.  The courts have unanimously concluded that claims like the ones here do not affect, and accordingly are not "related to," the bankruptcy estate.

As the Third Circuit held in the leading case of <u>Pacor Inc. v. Higgins</u>, 743 F. 2d 984 (3d Cir. 1984), primary actions against solvent co-defendants, are, "at best....a mere precursor to the potential third party claim for indemnification..." Id. at 995.  Such actions do not bind the debtor, do not determine the debtor's rights or obligations, and, since the debtor is not a party to such actions, the debtor would not face a bar of res judicata or collateral estoppel as a result of the outcome of the primary claim.  The debtor here will still be free to re-litigate any issue, and adopt any position in response to a subsequent claim for indemnification or contribution by Garlock.  *Id.*  Accordingly, courts have repeatedly held that such claims are not "related to" a bankruptcy.

8

Garlock's jurisdictional argument presumably is that if plaintiffs are successful in obtaining a judgment against Garlock, which holds Garlock jointly and severally liable for damages in part caused by the debtor, Garlock might have a contribution right against the bankrupt's estate. It is precisely such a claim, however, that the courts have held to be far too tenuous to support "related to" jurisdiction under 28 U.S.C. 1452. <u>Pacor</u> itself was decided in exactly the same context presented here -- a claim for contribution in an asbestos case by a solvent defendant against a bankrupt co-defendant -- and the Third Circuit soundly rejected the same argument Garlock makes here:

> Pacor stresses that the Higgins-Pacor claim would affect the Manville bankruptcy estate, in that without a judgment for plaintiff Higgins in that action, there could never be a third party indemnification claim against Manville. This argument does not alter our conclusion. At best, one could say that a judgment against the plaintiff on the primary claim would make absolutely certain that the Manville estate could never be adversely affected. This does not prove the converse, however that a judgment in favor of the plaintiff Higgins necessarily does affect the estate. The fact remains that any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification... Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action. Furthermore, Higgins [the plaintiff] is not a creditor of Manville and has filed no claim against Manville. Any judgment obtained would thus have no effect on the arrangement, standing, or priorities of Manville's creditors. There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

Id. at 995. In a decision rendered the same day as <u>Pacor</u>, the Third Circuit noted that the rule applied regardless of whether the contribution claim was severed from the plaintiff's

underlying claim.  Hanna v. Philadelphia Asbestos Co., 743 F.2d 996, 1001 (3d Cir. 1984).

The Fifth Circuit adheres to the rule articulated in Pacor, and has itself noted that the "vast majority of cases find that 'related to' jurisdiction is lacking in connection with third-party complaints." Walker v. Cadle Company, 51 F.3d 562, 569 (5th Cir. 1995), quoting In re Summit Airlines, 160 B.R. 911, 922 (Bankr. E.D. Pa. 1993) (listing cases). See also Sykes v. Texas Air Corp., 834 F.2d 488, 489 n. 4 (5th Cir. 1987); In re Schwamb, 169 B.R. 601, 604 (E.D. La. 1994), aff'd without opinion, 48 F. 3d 530 (5th Cir. 1995).  The rule also has been cited with approval by the U.S. Supreme Court. Edwards v. Celotex, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499 (1995).

Under this familiar rule, courts in asbestos and other mass tort cases have refused to exercise "related to" jurisdiction over claims by plaintiffs against non-bankrupt codefendants of the debtor.  For instance, in Nickum v. Brakegate, Ltd., 128 B.R. 648, 649-50 (C.D. Ill. 1991), appeal dism'd, 942 F.2d 1223 (7th Cir. 1991), the court found that "related to" jurisdiction did not exist in a removed asbestos case by virtue of a solvent defendant's contribution claim against a bankrupt co-defendant.  The court thus rejected what it termed, in language that is very apt here as well, a "nimble attempt to bootstrap state court actions into federal cases by way of the bankruptcy court." Id. at 649.  Following this holding, Judge Kendall held that "related to" jurisdiction did not exist in an action by plaintiffs against non-debtor breast implant defendants where one defendant was bankrupt. See McCratic, supra, 183 B.R. at 115.

Tellingly, Garlock, in its Emergency Motion to Transfer, fails to cite either Pacor or Nickum.  Instead, Garlock, in an attempt to enhance the significance of its phantom

10

contribution claims relies on a host of cases involving contractural indemnification, even when those cases specifically distinguish inchoate contribution claims of non-debtor co-defendants. For example, Garlock relies on <u>A.H. Robins v. Piccinin</u>, 788 F.2d 994 (4th Cir.), cert. denied, 479 U.S. 876 (1986) despite the fact that the Fourth Circuit Court of Appeals took pains to explain that its decision about bankruptcy jurisdiction was based on the existence of contractual indemnity, and specifically distinguished <u>Pacor</u>. 788 F.2d at 1000-01.

Many courts have held the the "automatic stay" provisions of §362 of Title 11 do not apply to contribution claims of non-debtor co-defendants like those allegedly asserted here by Garlock because such claims are not contractual in nature and are contested as to both liability and amount, highly speculative, and by historical experience so insubstantial as to be universally ignored. These holdings underscore the fact that third-party contingent claims for contribution and indemnity -- claims that would arise from a finding that a group of defendants were jointly and severally liable for an injury -- are simply too attenuated to be "related to" a bankruptcy. See <u>Wedgeworth v. Fibreboard</u>, 706 F.2d 541, 544 (5th Cir. 1983); <u>Luevano v. Dow Corning Corp.</u>, 183 B.R. 751-53 (W.D. Tex. 1995) ("In asbestos cases, claims against co-defendants are to proceed and no stay is to issue based solely on the existence of pending bankruptcy proceedings involving a debtor defendant."); see also <u>Austin v. UNARCO Industries, Inc.</u>, 705 F.2d 1, 4-5 (1st Cir.), cert. denied, 463 U.S. 1247, 104 S.Ct. 34 (1983); <u>Williford v. Armstrong World Industries, Inc.</u>, 715 F.2d 124, 126-7 (4th Cir. 1983); <u>Lynch v. Johns-Manville Sales Corp.</u>, 710 F.2d 1194, 1196-7 (6th Cir. 1983); <u>Pitts v. Unarco Industries, Inc.</u>, 698

F.2d 313, 314 (7th Cir. 1983) (per curiam).[1]  Indeed, the bankruptcy courts presiding over

asbestos defendant bankruptcies have repeatedly declined to exercise even their

discretionary power to extend a stay to solvent co-defendants who are subject to joint and

several liability.  See Wedgeworth, supra, 706 F.2d at 545; Lynch, supra, 710 F.2d at

1197; In re Related Asbestos Cases, 23 B.R. 523, 527 (N.D. Cal. 1982);  In re UNR

Industries, Inc., 23 B.R. 144 (Bankr. N.D. Ill. 1982).

     In effect, what Garlock seeks is the application of the automatic stay to the claims

by plaintiff against it.  The Fifth Circuit has held squarely, however, that non-bankrupt

co-defendants are not entitled to the benefits of the stay.  An unsupportable removal

should not be used to circumvent this established rule.


II.        THIS COURT MUST ABSTAIN FROM HEARING THIS CLAIM
            UNDER THE MANDATORY ABSTENTION PROVISION OF
            SECTION 1334(c), AND SO SHOULD REMAND THIS CASE TO
            STATE COURT.


     For the reasons set forth above, there is no bankruptcy jurisdiction over this

removed case.  Even if there were, however, this Court would be required to abstain from

exercising that jurisdiction.

     As detailed above, the only conceivable basis for bankruptcy jurisdiction in this

case would be if Garlock's third-party claim were "related to" the bankruptcy.  As such,

it is not a "core" proceeding, and so abstention is *required* if the test for mandatory

abstention is met.     In re Southmark Corp., 163 F.3d 925, 929 (5th Cir. 1999); In re

---

[1] The Fifth Circuit has reached the same result outside the asbestos context, GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985), as have district courts, e.g. Carway v. Progressive Co. Mut. Ins. Co. , 183 B.R. 769, 774 (S.D. Tex. 1995) (automatic stay "generally does not extend to non-debtors such as insurers and co-defendants who may have some connection to the debtor."), and Texas state courts.  See In re Southwestern Bell Tel. Co., 35 S.W.3d 602, 604 (Tex. 2000) (the automatic stay "only operates against the debtor, and does not operate against non-debtors, or even co-debtors, co-tortfeasors, or co-defendants.").

Rupp & Bowman Co., 109 F.3d 237, 239 (5th Cir. 1977);  Broyles v. U.S. Gypsum Co., 266 B.R. 778, 782-83 (E.D. Tex. 2001).  The doctrine of mandatory abstention applies in removed cases. Southmark, supra, 163 F.3d at 929;  Broyles, 266 B.R. at 782.

Under this doctrine, abstention is required if (1) there is no basis for federal jurisdiction other than §1334;  (2) the claim only "relates to" a bankruptcy case but does not arise under or in it;  (3) an action has been commenced in state court; and (4) the action could be timely adjudicated in state court.  Rupp & Bowman, supra, at 239.  Each requirement is met in this case.

First, there is no other basis for federal jurisdiction in this case, and Garlock does not assert one.  Second, for the reasons detailed above, this matter could only be "related to" a bankruptcy at best (which it is not).  Third, this case has been on file in state court for a considerable time.  Finally, the state court is positioned to "timely adjudicate" this matter.

In several recent cases involving allegations of joint liability among asbestos defendants for certain settlement payments, courts have ordered mandatory abstention.  A Texas federal court did very recently in Lupercio v. GAF Corp., No. EP-01-CA-228-DB (W.D. Tex., Oct. 19, 2001) (attached as Exhibit E).  Although "related to" jurisdiction was held to exist because the debtors had *contractual* obligations to indemnify the non-debtor defendants, id. at 3, mandatory abstention was held to apply.  This Court also rejected defendants' motion for transfer as "an unnecessarily dilatory tactic," and noted that any doubts about removal jurisdiction should be resolved in favor of remand.  Id. at 6, quoting Adams v. C.E. Thurston & Sons, Inc., No. 2:01CV321 (E.D. Va., July 16,

CVISPDF - www.fesio.com

2001) (See order, attached as Exhibit F).  The <u>Adams</u> court likewise ordered mandatory abstention in the same circumstances.  Exhibit F at 11-12.

Other Texas federal judges have reached the same result.  See <u>Broyles v. U.S. Gypsum Co.</u>, 266 B.R. 778, 782-86 (E.D. Tex. 2001); <u>Painter v. Certainteed Corp.</u>, No. 3:00-CV-2714-M (N.D. Tex. Dec. 20, 2000) (*See* order and transcript of hearing attached as Exhibit G).[2]

Since the test for mandatory abstention has been met, 28 U.S.C. 1334(c) requires that this court abstain from exercising jurisdiction over this claim.  <u>Luevano</u>, supra, 183 B.R. at 753 ("The independent state court claims of non-bankrupt defendants do not have impact on bankrupt defendant and therefore, the federal court must abstain from hearing the proceeding.").

III.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST THAT THE
        COURT DISCRETIONARILY ABSTAIN, AND/OR
        EQUITABLY REMAND THIS CASE

Even if mandatory abstention were not required in this case, §1334(c)(1) provides for discretionary abstention: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to cases under title 11."  Similarly, this Court may equitably remand claims related to bankruptcy cases: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28 U.S.C.

---

[2] In another instance, defendants who had removed a similar suit agreed to remand after plaintiffs filed their motion for remand and requested attorneys' fees and costs for improper removal.  See <u>Bierbaum v. Armstrong World Indus., Inc.</u>, No. 00-977-GPM (S. D. Ill., Jan. 30, 2001) (attached as exhibit H).

§1452(b).  Both core and non-core court proceedings may be the subject of discretionary abstention or equitable remand.  <u>Broyles</u>, supra, 266 B.R. at 784-85;  <u>Chickaway v. Banc One Dayton, N.A.</u>, 261 B.R. 646, 650 (S.D. Miss. 2001).  Given the similarity between the discretionary abstention and equitable remand doctrines, the factors underlying them are frequently evaluated together.  <u>Broyles</u>, supra at 785.  These factors include:

1.  the effect or lack thereof on the efficient administration of the estate;

2.  the extent to which state law issues predominate over bankruptcy issues;

3.  whether the applicable law is difficult or unsettled;

4.  the existence of related proceedings commenced in state court or elsewhere outside bankruptcy;

5.  whether there is any jurisdictional basis other than §1334;

6.  the degree of relatedness or remoteness to a bankruptcy case;

7.  the substance, rather than the form, of an asserted core proceeding;

8.  whether state law claims can be severed from core bankruptcy matters;

9.  the burden of the bankruptcy court's docket;

10.  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11.  the existence of a right to a jury trial;

12.  the presence in the proceeding of non-debtor parties;

13.  comity; and

14.  the possibility of prejudice to other parties.

<u>Broyles</u>, supra at 785.  All of these factors would favor abstention and remand in this case.

A.    Initial Considerations

Before surveying these factors, it is appropriate here to appreciate, again, the gross abuse of the federal court system at work here.  This is a state court tort case against non-debtor defendants.  Not a single case has ever held, in the asbestos or other mass tort context, that claims by plaintiffs against unrelated non-debtor defendants are to be tried in bankruptcy court, or are stayed by virtue of the automatic stay that protects the debtor.  Numerous cases, cited above, hold otherwise.

Moreover, the asserted basis for jurisdiction is a cross-claim of the kind so aptly labeled "immaterial and insubstantial" by Judge Gex in Mississippi.  It is a cross-claim that Garlock has never once pressed against this debtor.  Again, as reflected in Exhibit C, Garlock has never sought or obtained one cent in contribution from the debtor in hundreds of thousands of asbestos cases.

Nor is there anything unique about the Federal Mogul bankruptcy.  Several other companies have gone bankrupt during the pendency of this case.  Garlock was also "deemed" to have filed cross claims against these companies as well, yet it did not remove the case.  Instead, Garlock allowed the case to move forward toward trial, and only now asserts that this entire case must be heard in bankruptcy court.

Finally, the Court should consider the fact that of the tens of thousands of asbestos cases pending against it nationwide, Garlock has apparently removed only the claims of plaintiffs represented by the undersigned plaintiffs' counsel -- as if there were something about these particular claims that makes them uniquely subject to an assertion of bankruptcy jurisdiction.  Plaintiffs' counsel can only speculate as to the reasons for this campaign, but it suffices to say that federal removal procedure should not be used to

16

further some vendetta against a particular group of plaintiffs and their counsel. We respectfully submit that these circumstances are appropriately part of a discretionary abstention inquiry.

### B.    The Abstention and Remand Factors

For the reasons detailed in Part I above, the completion of this case in state court will have no cognizable effect on Flexitallic's bankruptcy estate. It is for this reason, of course, that courts have consistently held such claims not even to be "related to" bankruptcy proceedings. State law issues certainly predominate over bankruptcy issues, because plaintiffs' entire claim is based on garden variety state law tort theories. There are no difficulties in applying this law.

Inasmuch as this matter is not "related to" the Flexitallic bankruptcy, there is no related proceeding in bankruptcy; rather, the entire controversy was pending in state court until this eleventh-hour removal. Nor is there any federal jurisdictional basis other than §1334, and Garlock does not contend that there is.

This case is not a core proceeding, as Garlock acknowledges. Moreover, the extremely attenuated cross-claims against Federal Mogul can easily be severed from the plaintiffs' claims against all non-debtor defendants.

Finally, it must be said that the removal of this case under bankruptcy jurisdiction does, quite plainly, "involve forum shopping" by Garlock. Garlock has, purely and simply, turned to the bankruptcy courts to achieve a "self-help continuance." See Hernandez v. Brakegate, Ltd., 942 F.2d 1223, 1226 (7th Cir. 1991) (holding that orders of remand in bankruptcy cases are unappealable because, among other reasons, "removal and appeal may be designed to achieve little more than a self-help continuance."); see

CVisPDF - www.fasiso.com

also <u>Cassidy v. Wyeth-Ayerst Laboratories</u>, 42 F.Supp. 2d 1260, 1264 (M.D. Ala. 1999)(defendant in fen-phen suit removed case on basis of co-defendant's bankruptcy; court pretermitted issues of jurisdiction and mandatory abstention, and remanded case to state court based on discretionary abstention, noting forum shopping concerns and holding that "the real reason behind the removal of this case... is not the relatedness of the case to any bankruptcy proceeding, but rather is to make this case a part of the multidistrict litigation in Pennsylvania. *In other words, the removal is a fraud, a pretext for other reasons which would not independently support removal.").* (emphasis added)

As for the remaining factors, plaintiffs enjoy a right to jury trial in state court which would be lost if their case were part of a bankruptcy proceeding. There are other non-debtor defendants that have not joined in this removal and that presumably do not desire the interruption caused by Garlock. Comity certainly counsels in favor of remand, as it will restore the state court with jurisdiction over the case that it has enjoyed all along.

In sum, all of the factors in the discretionary abstention equitable remand inquiry favor abstention or remand in this case. Many courts have exercised their discretionary abstention or equitable remand powers to remand asbestos and other mass tort cases in similar circumstances. E.g., <u>Broyles</u>, supra, 266 B.R. at 785; <u>Thomas v. R.J. Reynolds Tobacco Co.</u>, 259 B.R. 571, 579 (S.D. Miss. 2001); <u>Spitzfaden v. Dow Corning Corp.</u>, 1995 WL 662663, *3 (E.D. La., Nov. 8, 1995) ("Finally, and most significantly, the Court is persuaded that remand is proper to prevent prejudice to the involuntarily removed parties....The automatic stay applies only to the debtor and not to the alleged co-tortfeasors."). As Judge Hughes put it, as if anticipating the present case: "Removal is

18

not automatic. State court defendants cannot clog the federal docket, interrupt the state court proceedings, delay state court trial settings, and inflate the costs to the plaintiffs without a *need* to remove the case." Da Silva v. American Savings, 145 B.R. 9, 13 (S.D. Tex. 1992) (emphasis the court's).

<div align="center">CONCLUSION AND PRAYER</div>

There is no federal subject matter jurisdiction in this case. This is because Garlock's third-party claim for contribution -- even if it existed, which it does not -- is not "related to" the Flexitallic bankruptcy. Even if there were jurisdiction, this Court would be required to abstain from exercising it under the doctrine of mandatory abstention. Finally, plaintiffs respectfully request in the alternative that the court exercise its powers of discretionary abstention and/or equitable remand.

Therefore, this case should be remanded to the District Court of Cameron County, so that it may proceed to trial. Plaintiffs also respectfully request an award of costs and attorneys' fees, for an unwarranted removal.

Respectfully submitted,
**WATERS & KRAUS**

_____

Charles S. Siegel
Attorney-in-Charge
State Bar No. 18341875
Federal ID No. 15736
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 facsimile


Frank Costilla
State Bar No. 04856500
Law Offices of Frank Costilla

<div align="center">19</div>

5 East Elizabeth Street
Brownsvill, Texas 78520
(956) 541-4982


Henry Simon
Simon, Warner & Doby, LLP
1700 City Center Tower II
301 Commerce Street
Fort Worth, Texas  76102
(817)  810-5250
(817)  810-5255 facsimile


**ATTORNEY FOR PLAINTIFFS**

20

ChiPDF - www.fasiva.com

## CERTIFICATE OF CONFERENCE

On October 24, 2001 I spoke to Melissa Ferrell, counsel for Garlock, Inc., the removing defendant in this case, and she stated that Garlock, Inc. is opposed to this motion. Garlock's counsel did not state any specific reason for its opposition to this motion.

Charles S. Siegel

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2001, this document was served on counsel for the removing defendant, Garlock, Inc., via U.S. mail. It is being served the same day, or, due to the volume of copying necessitated by over 80 motions for remand and multiple related pleadings, as soon thereafter as possible, on counsel for all other defendants, by U.S. Mail.

Charles S. Siegel

Frank Harmon
Crain Caton & James
3300 Two Houston Center
909 Fannin, 33rd Floor
Houston, Texas 77010
Crown, Cork & Seal

Lisa A. Powell
Jackson Walker
1100 Louisiana, Suite 4200
Houston, Texas 77002
Able Supply Co.

Mel Bailey
Bailey Crowe & Kugler LLP
4600 Bank Of America Plaza
901 Main Street
Dallas, Texas 75202-3736
GP, USM

Lewis C. Miltenberger
Corday Goodrich & Miltenberger
108 W. 8th Street, One Century Plaza, Suite 500
Fort Worth, Texas 76102
Harbison-Walker, A.P. Green, Global, Indresco

Todd Wade
Brown McCarroll & Oaks Harline
1300 Wortham Tower
2727 Allen Parkway
Houston, Texas 77019-2100
Kelly-Moore Paint Co.

Kenneth Rhodes
Dunn Kacal Adams Pappas & Law
One Riverway, Suite 1200
Houston, Texas 77056
ACandS, Inc

Gary Elliston
DeHay & Elliston L.L.P.
3500 Bank Of America Plaza
901 Main Street
Dallas, Texas 75202-3736
Center for Claims Resolution

John Hill Jr.
Locke Liddell & Sapp LLP
3400 Chase Tower
600 Travis
Houston, Texas 77002-3095
Metropolitan Life Insurance Co.

Peter A. Moir
Quilling Selander Cummiskey & Lowds P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201 75201
Owens- Illinios

Robert Wilkinson
Dogan & Wilkinson PLLC
734 Delmas Avenue, P.O. Box 1618
Pascagoula, MS 39568-1618
Guard-Line

Miller Thomas
Fairchild Price Thomas Haley & Willingham
PO Drawer 1719
413 Shelbyville St.
Center, Texas 75935
J.T. Thorpe

James Riley
Coats Rose Yale Ryman & Lee
800 First City Tower
1001 Fannin
Houston, TX 77002-6707
Foster Wheeler

Mary Lou Mauro
Galloway Johnson Tompkns & Burr
3555 Timmons, Suite 1225
Houston, Texas 77027
Combustion Engineering

Donald Godwin
Godwin White & Gruber P.C.
901 Main Street
Suite 2500
Dallas, Texas 75202-3714
Brown & Root, Dresser Ind.

22

Gail Jenkins
Jenkins Grove & Marton
2615 Calder, Suite 500
Beaumont, TX 77720-6008
Kaiser, Fina Oil & Chemical Co.

Ronald Walker
Walker Keeling & Carroll
210 E. Constitution
P.O. Box 108
Victoria, Texas 77902-0108
Alcoa Inc.

Catherine K. Faubion
Thompson Coe Cousins & Irons
200 Crescent Court, Eleventh Floor
Dallas, Texas 75201-1853

William C. Arnold
Forman Perry Watkins  Krutz & Tardy PLLC
400 Woodview Office Tower
1349 Empire Central
Dallas, Texas 75247
Uniroyal Holdings, INC

Russell Nunnally
Bell  Nunnally & Martin
3232 McKinney Avenue
1400 One McKinney Plaza
Dallas, Texas 75204-2429
Kaiser Aluminum & Chemical Corp.

Frank Poff
Crisp Jordan & Boyd
2301 Moores Lane
Texarkana, TX 75505-6297
Grefco

D. Ferguson McNeil
Vinson & Elkins
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
NARCO

James Harris
Harris Lively & Duesler
550 Fannin, Suite 650
PO Box 830
Beaumont, Texas 77704
Flintkote

Kyle C. Steele
Foreman Perry Watkins Krutz & Tardy PLI.C
1349 Empire Central
Woodview Office
Suite 400
Dallas, Texas 75247
Gasket Holding

Teri L. Danish
Rodriguez Colvin & Chaney LLP
1201 East Van Buren
P.O. Box 2155
Brownsville, Texas 78520
Garlock

23

CVISPDF – www.fasoo.com

CAUSE NO. 2000-05-002030-D

| | | |
|---|---|---|
| ARCHIE KOWALIK and MARTHA KOWALIK | § | IN THE DISTRICT COURT |
|     *Plaintiffs* | § | |
| | § | |
| V. | § | CAMERON COUNTY, TEXAS |
| | § | |
| ABLE SUPPLY COMPANY; | § | |
|     *Defendants* | § | JUDICIAL DISTRICT |

## PLAINTIFFS' NOTICE OF NON-SUIT WITHOUT PREJUDICE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW PLAINTIFFS ARCHIE KOWALIK and MARTHA KOWALIK by and through

their attorney of record. and file this their Notice of Non-Suit Without Prejudice as to Defendant

**GASKET HOLDING INC., only**. All claims of the Plaintiffs shall remain pending as to all other parties.

All costs shall be taxed to the party incurring same.

Respectfully submitted,

**WATERS & KRAUS, LLP**

_(signature)_

LESLIE MACLEAN
State Bar No. 00794209
PETER A. KRAUS
State Bar No. 11712980

3219 McKinney Ave., Ste. 3000
Dallas. Texas 75204
(214) 357-6244
(214) 357-7252 Fax

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the Court and sent to all counsel of record via facsimile, on this the 22 day of October, 2000.

_(signature)_

LESLIE MACLEAN

CVisPDF – www.faviva.com

# AFFIDAVIT OF CHARLES S. SIEGEL

**STATE OF TEXAS**  -                              §
                                                   §
**COUNTY OF DALLAS**                               §


My name is Charles S. Siegel. I am over 21 and have never been convicted of a felony. I am a partner at the firm of Waters & Kraus, LLP. All of the statements contained in this affidavit are true and correct and are within my personal knowledge.


1.      I am responsible for preparing and filing the motion for remand in the present case, as well as in the scores of other cases recently removed by Garlock and involving plaintiffs represented by my office.

2.      On Friday, October 19, 2001, we learned that one of our clients' actions, which had been in trial in state court in Brownsville, had been removed to federal court by Garlock. On Monday, October 22nd and in succeeding days, we received notices of removal in numerous other cases. As of today, we have received such notices in over 80 cases.

3.      On Tuesday, October 23, in an effort to find out more information concerning these removals, I contacted by e-mail several dozen other plaintiffs' counsel in asbestos litigation. Together, these attorneys constitute the vast majority of all attorneys regularly representing plaintiffs alleging asbestos-related injury in the United States. I inquired of them whether of any of their cases had been removed by Garlock. No one responded affirmatively. I also spoke to several attorneys in Texas who represent


EXHIBIT
B

1

plaintiffs in asbestos litigation, and they each told me that none of their cases had been removed.

     4.     Therefore, it is my belief that although Garlock is a defendant in tens of thousands of asbestos cases pending in courts across the nation, they have removed only those cases involving plaintiffs represented by Waters & Kraus.  This is apparently so despite the fact that the asserted basis for removal -- the existence of bankruptcy jurisdiction premised upon Garlock's cross-claims against bankrupt defendants -- would theoretically exist in every such case.

     5.     I verify that all exhibits attached and incorporated to plaintiff's motion for remand are true and correct copies of the originals.

     Further affiant sayeth not.

                                       Charles S. Siegel

SUBSCRIBED AND SWORN TO BEFORE ME on this 27th day of October, 2001 the said Charles S. Siegel, who has stated to me that the foregoing affidavit and statements contained herein are true and correct within his personal knowledge to certify which witness my hand and official seal of office.

                                     Notary Public in and for
                                     The State of Texas

My Commission Expires:

```
LAURA DINA RODRIGUEZ
MY COMMISSION EXPIRES
July 25, 2002
```

2

CVISPDF – www.fastio.com

## AFFIDAVIT OF JEFFREY B SIMON

STATE OF TEXAS                                    §
                                                 §
COUNTY OF DALLAS                                 §

     **BEFORE ME**, the undersigned authority, on this day personally appeared JEFFREY B SIMON known to me or through his drivers' license and who, upon his oath, deposes and states as follows:

     "My name is JEFFREY B. SIMON. I am over the age of 18 years and I am of sound mind and am in all ways competent to make this affidavit  All the statements contained herein are true and correct, and are based upon my personal knowledge

     I am counsel for Plaintiffs in the cases of Douglas Kwasnik and Arliene Pearson vs ACandS. Inc., et al, Cause No. EP-01-CA-0379, in the United States District Court for the Western District of Texas, El Paso Division. I am counsel for Plaintiffs in the matter of Debra Kulaw, Individually and as Personal Representative of the Heirs and Estate of LeVaughn Darnold, Plaintiffs. vs. ACandS, Inc., et al, in the United States District Court for the Southern District of Texas, Brownsville Division, Cause No. B01CV178

     On Wednesday, October 24, 2001, and Thursday, October 25, 2001, I spoke on the telephone with Paul Hanly, Jr  Mr Hanly explained the following items to me that are within his personal knowledge and are true and correct and that, subject to subpoena, he would verify the following by deposition

1. Mr Hanly has served as Chief National Trial and Coordinating Counsel in asbestos-related injury and wrongful death claims for Federal Mogul Corporation Gasket Holding Inc., Flexitallic, Inc., T&N PLC, T&N LTD, Wagner Electric Corporation, Ferodo Corporation, and related companies since March of 1998

2. Mr Hanly has served as trial counsel for T&N entities Flexitallic Inc, and Ferodo Corporation since 1981  He has been Chief National Trial and Coordinating Counsel for those companies since 1985

3. No one alive has more knowledge regarding the history and trial strategy of asbestos-related injury and wrongful death cases of those above-mentioned entities than does Mr Hanly

4. During the time in which Mr Hanly has represented T&N  T&N has resolved approximately 500.000 lawsuits filed in claims for asbestos-related personal injury and/or wrongful death  During that period of time Garlock, Inc., has been a co-defendant in several hundred thousand of those lawsuits

5. While Mr Hanly has represented Federal Mogul Corporation, Federal Mogul Corporation has resolved approximately 250.000 lawsuits filed in claims for asbestos-related personal injury and/or wrongful death  Garlock, Inc  was a co-defendant in most of those claims.

6. None of the corporations that Mr Hanly represents have ever paid Garlock any money through either settlement or judgment for any cross claim, claim for contribution, or claim for indemnity. Similarly Garlock has never paid any money to Mr Hanly's clients for any cross claim, claim for contribution, or claim for indemnity

7. To his knowledge, Garlock has never demanded any payment or affirmatively made any claim for payment as a cross claim, claim for contribution, or claim for indemnity of any



of the corporations represented by Mr. Hanly.

8  Garlock does not and historically has not filed formal or affirmative pleadings seeking cross claim, contribution, or indemnity from any of the corporations represented by Mr Hanly, other than those cross claims that are deemed to have been filed by Garlock s having filed an Answer to a Plaintiff's claim, as exists in the provisions of certain Standing Orders in Texas and similar orders of certain courts in some other states

9  Garlock has never conducted formal discovery against any of those corporations represented by Mr. Hanly, including, but not limited to, never having deposed a Federal Mogul or T&N witness.

10  Garlock has never attempted to prove liability against Federal Mogul or T&N in any case in which they remained with Garlock as trial defendants.

11. Federal Mogul Corporation and T&N and Gasket Holding. Inc., have been sued by hundreds of clients represented by Waters and Kraus, and in a professional context, the interest of Federal Mogul Corporation and T&N and other companies represented by Mr Hanly are adverse to those of the claimants represented by Waters and Kraus

12. Mr Hanly has not received any guarantees or promises in exchange for his testimony. he will tell the truth in response to a subpoena.

13  Garlock has never exercised any cross claim, claim for contribution. or a claim for indemnity against Federal Mogul Corporation or T&N or any related company   Such claims. if any. have been a non-event for Garlock and for the companies represented by Mr. Hanly in the resolution of hundreds of thousands of claims in which Garlock and Mr Hanly's clients were co-defendants.  Similarly, Mr. Hanly's clients' rights, if any. to levy cross-claims, claims for contribution, or claims for indemnity against Garlock. Inc have never been exercised in the resolution of hundreds of thousands of claims over many years

14  Paul Hanly Jr  was served with a subpoena to testify regarding these matters by telephonic deposition scheduled for Friday October 26. 2001, at 2.00 p.m EST  A notice of deposition was served upon more than one counsel for Garlock. Inc  Upon objection to the deposition by attorney Mitchell Chaney. counsel of Garlock. Inc . the deposition scheduled for October 26. 2001, was canceled.  The deposition has been rescheduled to occur on Friday November 2, 2001, 11  00 a m., at attorney Hanly's offices  Copies of the subpoena issued upon Mr  Hanly, the notice of deposition for October 26  2001  Garlock Inc  attorney Chaney's letter objecting to the deposition scheduled for October 26. 2001, and Plaintiff s First Amended Notice of Intent to take the Oral Deposition of Mr Hanly. subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction. for Mandatory Abstention. or for Discretionary Abstention or Equitable Remand, are attached to this Affidavit respectively as Exhibits 1. 2. 3. and 4

Further affiant sayeth not

JEFFREY B SIMON

**SUBSCRIBED AND SWORN TO BEFORE ME** by JEFFREY B SIMON on this 26Th day of October. 2001.

[ S E A L ]

Notary Public

CORRINE M KUZMA
NOTARY PUBLIC
State of Texas
Comm. Exp.07-30-2002

EXHIBIT
Simon
Affidavit 1

25 '(Rev 1/94: Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

──── DISTRICT OF ────

IN RE:

FEDERAL-MOGUL,   V.
INC., DEBTOR

Douglas Kwasnik and Arlene Pearson, Plaintiffs
ACandS, INC, et al, Defendants

TO:   Paul J. Healy, Jr.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER  01 - 10578
Chapter 11 (U.S Bankruptcy Court)

EPO:CACO79 [unclear]
Court [unclear]
Lawsuit [unclear]
Texas S [unclear]
[unclear]

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a de
the above case. Via Telephone Deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Coblence + Warner   415 Madison Ave 17Th Floor, NYC | Friday 10/[unclear] 2:00 pm ES |
| Telephone : 212 - 593 - 8000 |  |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or obje
place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified be

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth,
person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jeffrey Simon, Counsel for Plaintiffs | 10/25/01 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jeffrey Simon. 3219 McKinney Ave #3000 Dallas, TX. 75[unclear]

# WATERS & KRAUS, LLP

C. ANDREW WATERS*
PETER A. KRAUS**

Gavie M. Monola
David C. Greenstone
Barry L. Bobbitt
B. Scott Kruka
Rhonda Sullivan Cleaver
Ashley L. Watkins
Trevee G. Wolf
F. Leighton Durham. II:

*Licensed in Texas. California. North Carolina. and District of Columbia
**Licensed in Texas and Virginia

3219 McKinney Avenue. Suite 3000
Dallas. Texas 75204
Telephone 214-357-6244
Telecopier 214-357-7252

200 Oceangate. Suite 520
Long Beach. California 90802
Telephone 562-436-8833
Telecopier 562-590-7296

10231 Warwick Blvd
Newport News. Virginia 23601
Telephone 757-223-1275
Telecopier 757-223-1276

Of Counsel
Charles S. Siegel
*Jonathan A. Smith-George
Charles E. Lance

Jeffrey B. Simon
Darren P. McDowell
†Michael L. Armitage
Ron C. Eddins
Melissa A. Mires
Leslie C. MacLear
**George G. Tankard. II:

†Licensed in Virginia only
‡Licensed in California and Louisiana
**Licensed in Maryland and District of Columbia

PLEASE RESPOND TO THE DALLAS OFFICE

October 25. 2001

**VIA FACSIMILE**

**All Counsel of Record**

Re: Cause No B-01-CV-178, Debra Kulaw. et al vs. ACandS. Inc.. et al. In the United
States District Court for the Southern District of Texas. Brownsville Division

Dear Counsel.

Attached please find Plaintiffs' Notice of Intent to take the Telephonic Deposition of Paul
Hanly. Jr.. National Trial and Coordinating Counsel for Federal-Mogul Corporation. Ferodo
Corporation. FelPro Corporation. Wagner Electric Corporation. T&N Plc.. T&N Ltd.. Gasket
Holding. Inc.. Flexitallic. Inc and or related companies. subject to Plaintiffs' Motion for Remand
for Lack of Subject Matter Jurisdiction.. for Mandatory Abstention. or for Discretionary
Abstention or Equitable Remand. Plaintiffs may also use this deposition in other cases recently
removed to Federal Court.

Should you need additional information regarding this matter. please contact our offices

Sincerely

Jeffrey B. Simon

JBS/mlm
Enclosure
CC All Counsel of Record

**Counsel of record:**

| | | | | |
|---|---|---|---|---|
| Ed PenColas (Garlock) | 915-534-7207 | | Ferguson McNeil (Narco) | 713-758-2346 |
| Frank Harmon (CC&S) | 713-658-192 | | Karen Maston (Ametek) | 713-229-1522 |
| Kenneth Morris (Alcoa) | 214-905-3970 | | Kenneth Rhoades (AC&S) | 713-529-8101 |
| Mel Bailey (GP) | 214-749-5620 | | Jeffrey Lucky (Mars) | 915-587-8400 |
| Todd Wade (Kelly Moore) | 713-525-6205 | | James Tompkins (CE) | 713-599-0777 |



| | |
|---|---|
| Roger Wilkinson (Guard In) | 228-762-3223 |
| Gary Elliston (RS Kaiser) | 214-210-2506 |
| William Arnold (Entrosa) | 214-905-3976 |
| Donald Godwin (Dresser) | 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 |
| L Miltenberger (APC, HW IND) | 817-820-0373 |
| James Riley (Foster Wheeler) | 713-651-0226 |
| Kathy Hermes (Synkoloid) | 214-749-5626 |
| Burgain G Hayes (HoffmanLR) | 512-474-1124 |
| Tim Hogan (Quigley) | 713-904-1527 |
| Gary Elliston (Certainteed FedMog) | 214-210-2500 |
| Diana Herium | 214-521-1034 |

| | |
|---|---|
| Thomas Dougal (Bondex Proko) | 803-788-6767 |
| David Jeans (Asarco) | 915-832-7333 |
| John Hill (Metlite) | 713-223-3717 |
| James Harris (Flinkote) | 409-833-4240 |
| Thomas Tardy (Gasket) | 214-905-3976 |
| Clay White (Aqua-Chem) | 903-595-451 |
| Pranske (AC&S) | 214-651-8116 |
| Daniel Spam (CE) | 713-650-970 |
| William Book (Mars) | 713-655-7727 |
| Gail Jenkins (Proko) | 409-832-4242 |

**Anticipated counsel of record**

| | |
|---|---|
| David Jeans (C abc) | 915-832-7333 |
| Gary Elliston (Rue, Stoker) | 214-210-2500 |
| Gary Elliston (T&N) | 214-210-2500 |
| | |
| Shelby A Jordan | 361-884-~~6675~~ 5616 |
| Joe Spencer, Jr | 915-532-7535 |
| Melissa Ferrell | 512-476-7832 |
| Paul Hanly, Jr | 212-593-9058 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEBRA KULAW, Individually and as       §
Personal Representative of the Heirs    §
and Estate of LEVAUGHN DARNOLD,        §
                                        §
PLAINTIFFS                              §
                                        §
vs.                                     §
                                        §
ACandS, Inc., et al                     §     C.A. NO. B – 01 – CV – 178
                                        §
DEFENDANTS                              §

---

*IN RE*                                 §     CASE NO. 01-10578
                                        §     Chapter 11
FEDERAL-MOGUL GLOBAL, INC              §     (Pending in the United States
                                        §     Bankruptcy Court for the
DEBTOR                                  §     District of Delaware)

## PLAINTIFFS' NOTICE OF INTENT TO TAKE THE TELEPHONIC DEPOSITION OF PAUL HANLY, JR.

TO DEFENDANTS AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure,

and subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction, for

Mandatory Abstention, or for Discretionary Abstention or Equitable Remand, Plaintiffs

will take the Telephonic Deposition of Paul Hanly, Jr., National Trial and Coordinating

Counsel for Federal-Mogul Corporation, Ferodo Corporation, FelPro Corporation,

Wagner Electric Corporation, T&N Plc., T&N Ltd., Gasket Holding, Inc., Flexitallic, Inc.

and/or related companies, on Friday, October 26, 2001, at 2:00 p.m. Eastern Standard

Time. Deponent's phone number is 212-593-8000. Please note the following numbers for telephonic conferencing of this deposition:

>
> **Call-In Number:** **1-800-333-1591**
> **Participant Code:** **641103**

The deposition will take place before a certified court reporter provided by Henjum Goucher Reporting, 2501 Oak Lawn Ave, Suite 435, Dallas, Texas 75219, 214-521-1188.

Parties are invited to attend this deposition by telephone and cross-examine the witness. The deposition will continue from day to day until completed.

Respectfully submitted,
**WATERS & KRAUS, LLP**

JEFFREY B. SIMON
State Bar No. 00788420
PETER A. KRAUS
State Bar No. 11712980
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
214-357-6244
214-357-7252 Fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all counsel of record by facsimile this 25th day of October, 2001

JEFFREY B. SIMON

RODRIGUEZ COLVIN & CHANEY. LLP

RODRIGUEZ CO-VIN & CHANEY. L L P
ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP
1201 EAST VAN BUREN
P O BOX 2155
BROWNSVILLE TEXAS 78522
TELEPHONE (956) 542-7441
TELECOPIER (956) 541-2170
www.rcclaw.com

EDUARDO ROBERTO RODRIGUEZ
NORTON A COLVIN JR
MITCHELL C CHANEY
MARJORY C BATSELL
JAIME A SAENZ*
JOSEPH A (TONY) RODRIGUEZ
ALISON D KENNAMER

OF COUNSEL:
BENJAMIN S HARDY (1912-1993)
ORRIN W JOHNSON
NEIL E NORQUEST
CHRIS A BRISACK
RAYMOND A COWLEY'

LAURA J URBIS
LECIA L CHANEY
R PATRICK RODRIGUEZ
ROSAMARIA V LACOMEZ-VELA
TERI L DANISH
DARRYL E ATKINSON

*BOARD CERTIFIED IN PERSONAL
INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

'BOARD CERTIFIED IN LABOR AND
EMPLOYMENT LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

October 25, 2001

**Via Facsimile: 214-357-7252**
Mr. Jeffrey B. Simon
Waters & Kraus, L.L.P.
3219 McKinney Avenue. Suite 3000
Dallas, Texas 75204

Re: Cause No. B-01-CV-178; Debra Kulaw, et al. vs. Able Supply Co.. et al.

Dear Mr. Simon:

I have a copy of a letter discussing a notice of deposition of Paul Hanly. Jr. Apparently the letter was faxed to almost every lawyer in this case except for me. Please make sure I am on your list for future correspondence. I do not have the notice of deposition.

Under the Federal Rules deposition notices for a deposition must be reasonable. A notice less than 24 hours, I do not believe is reasonable. Further, telephonic depositions can not be taken in Federal Court without agreement of counsel or order of the Court I have not seen a Court order for this deposition and I certainly do not agree to it. Also parties are prevented from conducting discovery as you are attempting under Rule 26 of the Federal Rules of Civil Procedure. Let me know if I need to file a motion for protection of if you agree to reschedule the deposition.

Lastly, it seems odd to me that you are attempting to take the deposition of a representative of a party in Bankruptcy. Did you get the Automatic Stay lifted in order to conduct this discovery? If so, I would like to see some agreement. If not, I believe you are in violation of the Automatic Stay.

If I do not hear from you immediately I will proceed to file the appropriate motions tomorrow morning in Federal Court.

Very truly yours,

RODRIGUEZ. COLVIN & CHANEY, L.L.P.

Mitchell C. Chaney

EXHIBIT
Simon
Affidavit 3

# WATERS & KRAUS, LLP

C ANDREW WATERS*
PETER A KRAUS**

3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
Telephone 214-357-6244
Telecopier 214-357-7252

Of Counsel
Charles S Siegel
†Jonathan A Smith-George
Charles E Lance

Gayle M Mortola
David C Greenstone
Barry _ Bobbit
B Scott Kruka
Rhonda Sullivan Cleave
Ashley _ Watkins
Troyce G Wolf
F Leighton Durham II

200 Oceangate, Suite 520
Long Beach, California 90802
Telephone 562-436-8833
Telecopier 562-590-7296

Jeffrey B Simon
Darren P McDowell
‡Michael L Armitage
Ron C Eddins
Melissa A Miles
Leslie C MacLean
**George G Tankard II

*Licensed in Texas California North
Carolina and District of Columbia
**Licensed in Texas and Virginia

10231 Warwick Blvd.
Newport News, Virginia 23601
Telephone 757-223-1275
Telecopier 757-223-1276

†Licensed in Virginia only
‡Licensed in California and Louisiana
**Licensed in Maryland and
District of Columbia

PLEASE RESPOND TO THE DALLAS OFFICE

October 26, 2001

**VIA FACSIMILE**

**All Counsel of Record**

Re: Cause No. B-01-CV-178: Debra Kulaw, et al vs. ACandS, Inc., et al: In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Counsel,

Attached please find Plaintiffs' First Amended Notice of Intent to take the Oral Deposition of Paul Hanly, Jr., National Trial and Coordinating Counsel for Federal-Mogul Corporation, Ferodo Corporation, FelPro Corporation, Wagner Electric Corporation, T&N Plc., T&N Ltd., Gasket Holding, Inc., Flexitallic, Inc and/or related companies, subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction, for Mandatory Abstention, or for Discretionary Abstention or Equitable Remand  Plaintiffs may also use this deposition in other cases recently removed to Federal Court

Should you need additional information regarding this matter  please contact our offices

Sincerely,

Jeffrey B Simon

JBS/mlm
Enclosure
CC  All Counsel of Record

**Counsel of record**

| | | | |
|---|---|---|---|
| Ed Peticolas (Garlock) | 915-534-7207 | Ferguson McNeil (Narco) | 713-758-2346 |
| Frank Harmon (CC&S) | 713-658-1927 | Karen Maston (Ametek) | 713-229-1522 |
| Kenneth Morris (Alcoa) | 214-905-3976 | Kenneth Rhodes (AC&S) | 713-524-8161 |
| Mel Bailey (GP) | 214-749-5620 | Jeffrey Lucky (Mars) | 915-587-8401 |
| Todd Wade (Kelly Moore) | 713-525-6295 | James Tompkins (CE) | 713-599-0777 |



Robert Wilkinson (Guardian)          228-762-2223
Gary Elliston (RS Kaiser)            214-210-2500
William Arnold (Unirova)             214-905-3976
Donald Goodwin (Dresser)             214-765-7332
L. Miltenberger APG HW IND.          817-820-0373
James Riley (Foster Wheeler)         713-651-0220
Kathy Hermes (Symkolold)             214-749-5620
Burgain G. Hayes (Hoffman LR)        512-474-1129
Tim Hogan (Quigley)                  713-966-1527
Gary Elliston (Certainteed FedMog)   214-210-2500
Diana Henium                         214-652-1034

## Anticipated counsel of record

David Jeans (Cabco)                  915-832-7333
Gary Elliston (Riley Stoker)         214-210-2500
Gary Elliston (TAS)                  214-210-2500

Shelby A. Jordan                     361-884-5678
Joe Spencer, Jr.                     915-532-7535
Melissa Ferrel                       214-765-7832
Paul Hanis, Jr.                      212-503-9058
Mitchell Cheney                      956-541-2170

Henium Soucher  214-521-1034

Thomas Dougall (Bondex/Proko)        803-788-6767
David Jeans (Asarco)                 713-223-2717
John Hill (Metlite)                  404-853-4240
James Harris (Flintkote)             214-905-3976
Thomas Tardy (Gasket)                903-595-4511
Clay White (Aqua-Chem)               214-651-8310
Pranske (AC&S)                       713-650-6970
Daniel Spain (CE)                    713-655-7727
William Book (Mars)                  409-832-4242
Gail Jenkins (Proko)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DEBRA KULAW. Individually and as §
Personal Representative of the Heirs §
and Estate of LEVAUGHN DARNOLD. §
                                    §
PLAINTIFFS                          §
                                    §
vs.                              .  §
                                    §
ACandS. Inc.. et al                 §       C.A. NO. B – 01 – CV – 178
                                    §
DEFENDANTS                          §

_____

IN RE·                              §       CASE NO. 01-10578
                                    §       Chapter 11
FEDERAL-MOGUL GLOBAL. INC.          §       (Pending in the United States
                                    §       Bankruptcy Court for the
    DEBTOR                          §       District of Delaware)


## PLAINTIFFS' FIRST AMENDED NOTICE OF INTENT TO TAKE THE ORAL DEPOSITION OF PAUL HANLY. JR.

TO DEFENDANTS AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that, pursuant to the Federal Rules of Civil Procedure,

and subject to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction, for

Mandatory Abstention, or for Discretionary Abstention or Equitable Remand, Plaintiffs

will take the Oral Deposition of Paul Hanly, Jr., National Trial and Coordinating Counsel

for Federal-Mogul Corporation. Ferodo Corporation. FelPro Corporation. Wagner

Electric Corporation. T&N Plc.. T&N Ltd.. Gasket Holding. Inc.. Flexitallic, Inc. and/or

related companies. on Friday, November 2, 2001, at 11:00 a.m. at the law offices of

Coblence and Warner, 415 Madison Ave. New York, NY 10017, telephone number 212-593-8000.

The deposition will take place before a certified court reporter provided by Henjum Goucher Reporting, 2501 Oak Lawn Ave, Suite 435, Dallas, Texas 75219, 214-521-1188.

Parties are invited to attend this deposition by telephone and cross-examine the witness. The deposition will continue from day to day until completed.

Respectfully submitted,
**WATERS & KRAUS, LLP**

JEFFREY B. SIMON
State Bar No. 00788420
PETER A. KRAUS
State Bar No. 11712980
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
214-357-6244
214-357-7252 Fax
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all counsel of record by facsimile this 26th day of October, 2001

JEFFREY B. SIMON

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

-  3 2001

BY_____ DEPUTY

SIMEON JOHNSON, *et al.*                                              PLAINTIFFS

VS                                             CIVIL ACTION NO  1.01cv408GR

ACANDS, INC., *et al.*                                               DEFENDANTS

## O R D E R

This cause comes before the Court on the motion to remand [2-1] filed by the plaintiffs,

Simeon Johnson, *et al.*  After due consideration of the evidence of record, the briefs of counsel,

the applicable law, and being otherwise fully advised in the premises, the Court finds as follows

The Court shall recite a brief procedural history of this case:

1  Plaintiffs filed their complaint in April 2000 in the Circuit Court of Holmes
County.

2.  Part VII (B.) of the Case Management Order dated September 28, 2000,
stipulates that "[c]ross claims for indemnity must be filed in accordance with the
Mississippi Rules of Civil Procedure    . [and] all cross claims for indemnity and
counter claims, as well as the claims of Plaintiffs and of those defendants that
declare bankruptcy, arising out of or relating to this matter are hereby severed for
trial at another date and time." (Pl. Mot  to Remand, Exh. B.)

3  On June 25, 2001, named defendant U. S. Gypsum Company [Gypsum] filed
for relief under Chapter 11 with the United States Bankruptcy Court for the
District of Delaware

4  On September 18, 2001, the plaintiffs dismissed named defendants Flexitallic,
Inc. [Flexitallic], and Gypsum.

5  On October 1, 2001, Flexitallic filed for relief under Chapter 11 with the
United States Bankruptcy Court for the District of Delaware

6.  On October 2, 2001, the defendants filed a notice of removal with this Court

EXHIBIT

D

7. On October 2, 2001, the plaintiffs filed an emergency motion to remand with this Court.

The defendants contend, over the objection of the plaintiffs and of the Case Management Order of September 28, 2000, that the defendants have cross-claims for indemnity pending against Flexitallic and Gypsum.

The defendants assert the jurisdiction of this Court pursuant to 28 United States Code § 1334(b), claiming their indemnity actions to be a core proceeding   Alternatively, the defendants contend that if their indemnity actions are not core proceedings, they are at least related, non-core proceedings and therefore, not subject to the mandatory abstention provision of 28 United States Code § 157(b)(4).

From the outset, the Court notes that actions for indemnity do not accrue until the primary defendant sustains loss or is cast in judgment   *See Meloy v. Conoco, Inc.*, 817 F.2d, 275, 280 (5th Cir. 1987); *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 235-36 (5th Cir. 1985); *Orient Mid-East Lines, Inc. v. A Shipment of Rice*, 496 F.2d 1032, 1042 (5th Cir 1974)   "The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay " *Meloy*, 817 F 2d at 280. In this instance, the defendants' cross-claims for contribution, like indemnity, are irrelevant as they are unripe for adjudication. Further, because there is no actual or imminent injury there is no standing   Consequently, the claims which form the basis for removal are nonjusticiable claims, and the Court must remand the case to the Circuit Court of Holmes County

Alternatively and no less binding, the Court finds that the Case Management Order of September 28, 2000, specifically severed such actions as the instant cross-claims from the asbestos suit filed in the Circuit Court of Holmes County, regardless of the arguments by the

2

defendants that cross-claims for contribution were deemed to be filed against all defendants. Further, Flexitallic and Gypsum were dismissed from the asbestos case and are no longer named defendants. Also, per the Case Management Order, the cross-claims against Flexitallic and Gypsum could be viewed as dismissed relating back to the date of September 19, 2001, which was the scheduled date of the pre-trial, or be seen as constructively dismissed due to the fact that such claims shall mandatorily be dismissed by no later than 30 days from September 18, 2001, the date the Order of Dismissal was filed. ( See Case Management Order dated September 28, 2000, Parts VII, XV )  The Court shall not condone removal based upon such immaterial and insubstantial cross-claims.  The Court therefore finds that the defendants' cross-claims are moot.

Assuming *arguendo* that the cross-claims were ripe for adjudication and ignoring the serious issue of establishing federal subject matter jurisdiction through a cross-claim arising under a state action lacking a federal question, this Court refuses to exercise its supplemental jurisdiction pursuant to 28 United States Code § 1367(c)(2) because the state claims predominate over the issue of contribution.  Further, this Court will not exercise jurisdiction over state claims where the defendants have removed a case on the eve of trial concerning cross-claims for contribution against a non-party currently involved in bankruptcy proceedings in Delaware, especially given the fact that the legal basis for removal -- the filing for bankruptcy relief -- was known as early as June 25, 2001, when Gypsum sought Chapter 11 relief  See 28 U.S.C § 1367(c)(4).  Consequently, the Court finds that all state claims should be remanded to the Circuit Court of Holmes County.

Again, assuming *arguendo*, that the cross-claim for contribution is ripe and federal subject matter jurisdiction exists, the Court finds that it should, in the interest of comity with

3

10/22/01  13:51 FAX 2148712263          SIEGEL LAW OFFICE                    ☑005/005
Received:  10/22/01 14:43;          601 354 2881 -> JetFax M920;  Page 5
Oct 22 01 02:41p      BYRD & ASSOC.              601-354-2881          p.5

State courts and respect for State law, abstain from hearing the proceeding pursuant to this

Court's discretionary authority under 28 United States Code § 1334(c)(1). It is therefore,

ORDERED AND ADJUDGED that the plaintiffs' motion to remand [2-1] be, and is

hereby, granted. It is further,

ORDERED AND ADJUDGED that the above referenced action be, and is hereby,

remanded to the Circuit Court of Holmes County, Mississippi. The Clerk of Court is directed to

immediately forward a copy of this order, together with the Court record, to the Circuit Court of

Holmes County, Mississippi. It is further,

ORDERED AND ADJUDGED that the parties bear their respective costs.

SO ORDERED AND ADJUDGED this the 3rd day of October, A.D., 2001

UNITED STATES DISTRICT JUDGE

4

CVISPDF – www.fasiso.com

<center>

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

</center>

| | |
|---|---|
| ALEJANDRO LUPERCIO, et al.,<br>    **Plaintiffs**<br><br>v.<br><br>GAF CORPORATION (successor to<br>RUBEROID CORPORATION), et al.,<br>    **Defendants** | § <br> § <br> § <br> §    EP-01-CA-228-DB<br> § <br> § <br> § <br> § |



<center>

## MEMORANDUM OPINION AND ORDER

</center>

On this day, the Court considered "Plaintiffs' and Intervenor's Motion to Remand
and Abstain, and Brief in Support" ("Motion to Remand"), filed in the above-captioned cause on
July 2. 2001.  On July 16, 2001, Defendants filed their "Opposition of Defendants to Plaintiffs'
Motion to Remand or Abstain."  Plaintiffs filed their "Reply Brief in Support of Motion to
Remand or Abstain" on July 24, 2001

<center>

### BACKGROUND

</center>

Plaintiffs Alejandro Lupercio, et al., commenced this cause in County Court at
Law Number Three in El Paso County. Texas, on November 17, 2000.  Plaintiffs allege breach of
settlement agreements with the Center for Claims Resolution ("CCR"), a Delaware corporation
organized to represent Defendants and others in resolving asbestos-related claims.  Plaintiffs seek
payment from Defendants of settlement claims owed but not paid by CCR.  Defendants filed
Notice of Removal on June 25, 2001, pursuant to 28 U.S.C. § 1452(a).  The instant motions soon
followed and on August 27, 2001, the Court heard oral arguments.

<center>

39

</center>

<div style="border:2px solid black; display:inline-block; padding:4px;">

**EXHIBIT**

*E*

</div>

## AUTHORITIES

Under 28 U.S.C. § 1452(a), a party may remove a case to the federal district court if that court has jurisdiction under 28 U.S.C. § 1334. Title 28 U.S.C. § 1334(b) confers jurisdiction on the district court over cases "arising under title 11, or arising in or related to cases under title 11." Title 11 regulates the administration of bankruptcy proceedings. "Related to" jurisdiction over a case arises under § 1334(b) when "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (adopting the standard as stated by the United States Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)); *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995). Alterations of the bankruptcy debtor's rights, liabilities, options, or freedom of action all qualify as effects that support "related to" jurisdiction. *In re Zale Corp.*, 62 F.3d at 752. Upon a timely motion by a party, however, a district court must abstain from presiding over a case "related to a case under title 11 but not arising under title 11 or arising in a case under title 11," where the action could not have been commenced in federal court absent jurisdiction under § 1334, and the case can be timely adjudicated in state court. 28 U.S.C.A. § 1334(c)(2) (West Supp. 2001).

## DISCUSSION

Defendants assert that the Court may properly exercise jurisdiction in this case because two members of CCR, United States Gypsum Company ("U.S. Gypsum"), at one time a defendant in this case, and Armstrong World Industries, Inc. ("Armstrong"), have filed bankruptcy petitions. Defendants argue that the instant case is "related to" those bankruptcy proceedings, within the meaning of 28 U.S.C. § 1334(b). Defendants also aver that the instant

2

CVAPDF - www.lexisc.com

case is a core matter, as that term is described in 28 U.S.C. § 157, with respect to the bankruptcy proceedings and, therefore, it is not proper for the Court to abstain. Finally, Defendants suggest that the Court transfer the case to the United States District Court for the District of Delaware if there are any doubts as to whether abstention is appropriate.

Plaintiffs, on the other hand, argue that the Court may not properly exercise jurisdiction because the case is not sufficiently related to a Title 11 case, as required by 28 U.S.C. § 1334(b). In support of this argument, Plaintiffs point out that, at the time of removal, U.S. Gypsum was not a defendant in the case and no other defendant had filed for bankruptcy.[1] Specifically, U.S. Gypsum filed for bankruptcy and was non-suited by Plaintiffs on the same day the case was removed. Plaintiffs contend that, because Defendants in this case are not parties to the bankruptcy proceedings, there is no basis for "related to" jurisdiction. In response, Defendants point out that it is likely that U.S. Gypsum and Armstrong will be liable, based on their contractual obligations with the CCR, to indemnify Defendants should Plaintiffs prevail in this case. Defendants emphasize that the potential resulting obligations will be satisfied, to the extent possible, from the assets that currently comprise the bankruptcy estates.

The Court agrees with Defendants that the outcome of the instant case could conceivably effect the administration of the bankruptcy estates. Because neither U.S. Gypsum nor Armstrong are parties in this case, they are relegated to third party status. Most courts,

---

[1] The Court notes that, subsequent to removal, four Defendants filed for bankruptcy. Three filed in the United States District Court for the District of Delaware, and one in the United Kingdom. Defendants, however, must prove jurisdiction at the time of removal. *Howery v. Allstate Ins. Co.*, No. 99-20878, 2001 WL 203072, *2 (5th Cir. 2001); *Texas Beef Group v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000). The post-removal petitions, therefore, have no bearing on the Court's remand analysis.

3

however, consider "related to" jurisdiction proper where the subject of a third-party dispute is property of a bankruptcy estate. *In re Zale*, 62 F.3d at 753 (citations omitted). Here, the third-party dispute rests squarely on the disposition of the property that comprises the bankruptcy estates. Accordingly, the Court finds that "related to" jurisdiction, pursuant to 28 U.S.C. 1334(b), is proper in this case.

Plaintiffs next argue that, even if the Court finds "related to" jurisdiction proper in this situation, the Court must abstain from the case and remand it, pursuant to 28 U.S.C. 1334(c)(2), because it is not a case under Title 11 nor does it arise in a case under Title 11. Title 28 U.S.C. 157(b)(2) provides a non-exclusive list of those proceedings that are deemed to be core proceedings under Title 11. Defendants assert that the instant case is a core proceeding, arguing that it falls into two of the listed categories: 1) matters pertaining to the administration of the estate and 2) other proceedings, not including personal injury tort and wrongful death claims, that affect the liquidation of bankruptcy estate assets. 28 U.S.C.A. § 157(b)(2)(A), (b)(2)(O) (West 1993). Defendants support their position with essentially the same argument they use to support "related to" jurisdiction. That is, because of the possibility that U.S. Gypsum and Armstrong may incur liabilities from this litigation that may ultimately be satisfied from the bankruptcy estate, the mandatory abstention provision of 28 U.S.C. 1334(c)(2) does not apply.[2]

The Fifth Circuit, in *In re Wood*, held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." 825 F.2d at 97. The Court is of the

---

[2] Defendants do not claim that jurisdiction is proper under any provision other than 28 U.S.C. § 1334, nor do they argue that failure to meet any other element of 28 U.S.C. 1334(c)(2) renders abstention not mandatory.

4

opinion that, unlike the conceivable effect standard required to confer "related to" jurisdiction under 28 U.S.C. 1334(b), the core proceeding standard requires a direct and certain tie between bankruptcy law and the removed cause of action. In *In re Wood*, the court considered a case involving wrongful appropriation of corporate assets by two defendants, one of whom had filed a voluntary bankruptcy petition. *Id.* at 91. The court found that "[t]he essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law." *Id* at 98. The court reasoned that, although it was possible that the defendants' liabilities. if found, may have lead to a claim against the bankruptcy estate at issue, "[a]t this juncture . . . these concerns are speculative and insubstantial issues in the proceeding." *Id.* In the instant case, the essential issue is whether Defendants are liable to Plaintiffs under Texas law for unpaid settlement claims, with all other issues remaining speculative. The Court is of the opinion that, although the possible effect on the administration of the U.S. Gypsum and Armstrong bankruptcy estates is enough to confer "related to" jurisdiction, it does not raise the removed cause of action to the level of a core proceeding.

The Court is similarly unpersuaded by Defendants' attempt to characterize the instant case as a *non*-core proceeding that is exempt from mandatory exemption in order to shoe-horn it into 28 U.S.C. § 157(b)(4). Title 28 U.S.C. § 157(b)(2)(B) states that core proceedings do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11 " Section 157(b)(4) provides an exception to mandatory abstention for these non-core proceedings. The Court finds, however. that the instant case is not a case under Title 11 at all, but is, instead. a state law breach of contract complaint and, therefore, does not meet the characterization of a non-

5

core proceeding provided in 28 U.S.C. § 157(b)(2)(B)  The Court is, therefore, of the opinion that the exception to mandatory abstention provided in 28 U.S.C. § 157(b)(4) does not apply.

For the foregoing reasons, the Court is of the opinion that it must abstain in accordance with the mandatory provisions of 28 U.S.C. 1334(c)(2) and remand the case.

Having-determined that abstention is mandatory and that the case should be remanded, the Court need not reach Plaintiffs' and Defendants' remaining arguments concerning permissive abstention and equitable remand.  Similarly, the Court declines Defendants' invitation to pass these issues to another court if there is "any remaining doubt."  Much like the court in the Eastern District of Virginia, transfer to Delaware strikes this Court as "an unnecessarily dilatory approach."  Besides, in the Fifth Circuit, "doubts regarding whether removal jurisdiction is proper should be resolved *against* federal jurisdiction." *Acuna v Brown & Root, Inc.*, 200 F.3d 335 (5th Cir  2000) (emphasis added).

Finally, Plaintiffs ask the Court to order Defendants to pay their attorney fees incurred as a result of this removal.  Title 28 U.S.C. 1447(c) provides that "an order remanding a case may require payment of just costs . . . including attorney fees."  There is no automatic award of attorney fees once it is determined that a case was improperly removed. *Valdes v  Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).  In deciding this matter, the Court must objectively consider the merits of Defendants' case and must not consider Defendants' motive for removal. *Id.*  In this case, the Court is of the opinion that mandatory abstention was not obvious, as Plaintiffs claim, and that Defendants' case for removal was not without merit  For that reason, the Court is of the opinion that no attorney fees should be awarded to Plaintiff.

6

Accordingly, **IT IS HEREBY ORDERED** that the above-captioned cause is

**REMANDED** to the County Court at Law Number Three of El Paso County, Texas.

        **IT IS FURTHER ORDERED** that all other pending motions before this Court,

if any, are **DENIED AS MOOT**.

        **SIGNED** this **19th day of October, 2001**.

                         THE HONORABLE DAVID BRIONES
                         UNITED STATES DISTRICT JUDGE

7

CVISPDF – www.fastio.com

07·23·01   13:39 FAX 214 443 0358      STANLEY MANDEL & IOLA      → WATERS & KRAUS      ☒002 040

FILED

JUL 1 6 2001

CLERK, U.S. DISTRICT COURT
NORFOLK VA

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

PAULINE B. ADAMS, etc.,
             Plaintiff.

       v.                                        Civil Action No. 2:01cv321

C.E THURSTON & SONS, INC, *et al.*
           Defendants.


CYNTHIA L. BAKER, etc.,
             Plaintiff,

       v.                                        Civil Action No. 2:01cv323

C.E THURSTON & SONS, INC, *et al.*
           Defendants.


PHYLLIS ANN BALDWIN, etc.,
             Plaintiff,

       v.                                      Civil Action No. 2:01cv320

C.E THURSTON & SONS, INC, *et al.*
           Defendants.


NANCY C. CRAWFORD, etc.,
             Plaintiff,

       v.                                      Civil Action No. 2:01cv319

C.E THURSTON & SONS, INC, *et al.*
           Defendants.

MORRIS FINK,
             Plaintiff,
       v.                                      Civil Action No. 2:01cv315

C.E THURSTON & SONS, INC, *et al.*
           Defendants.



EXHIBIT
F

RAYMOND P. HINES,
              Plaintiff,

      v.                                    Civil Action No. 2:01cv317

C.E THURSTON & SONS, INC, *et al.*
              Defendants.


LORI MASON, etc.
              Plaintiff

      v.                                    Civil Action No. 2:01cv363

C.E THURSTON & SONS, INC, *et al.*
              Defendants.


WILLIAM H. MONROE, Jr., etc.,
              Plaintiff,

      v.                                    Civil Action No. 2:01cv316

C.E THURSTON & SONS, INC, *et al.*
              Defendants.


NOREEN F. ROCHELLE, etc.,
              Plaintiff,

      v.                                    Civil Action No. 2:01cv318

C.E THURSTON & SONS, INC, *et al.*
              Defendants.


EZZY WYRON,
              Plaintiff,

      v.                                    Civil Action No. 2:01cv322

C.E THURSTON & SONS, INC, *et al.*
              Defendants.

# ORDER AND OPINION

On June 25, 2001, the Court heard oral argument with respect to the following motions filed in the above-referenced matters: (1) Defendant C.E. Thurston & Sons' ("Thurston") motions to transfer; (2) Plaintiffs'[1] motions to remand or to abstain; and (3) Defendant's motions for extension of time.[2]  Thurston removed each of the above-referenced cases from the Circuit Court for the City of Portsmouth Virginia ("Portsmouth Circuit Court").  All the parties agree that this Court is not the proper forum in which to have these removed actions resolved.[3]  Plaintiffs argue in favor of remand to Portsmouth Circuit Court, while Thurston seeks the transfer of these cases to the United States District Court for the District of Delaware where the bankruptcy case of its alleged co-obligor, Armstrong World Industries, Inc. ("Armstrong"), is pending.  For the reasons set forth below, the Court finds that remand of these cases to Portsmouth Circuit Court is appropriate.

## I.    Factual and Procedural Background

Each of the individual Plaintiffs in these cases brought a state court action against multiple defendants, including Thurston, seeking damages for personal injuries or wrongful death alleged to have been caused by asbestos-containing products manufactured or distributed by

---

[1]    This Order and Opinion refers to the plaintiffs in these matters collectively as "Plaintiffs."

[2]    Only the motions pending in the Fink, Mason and Baker cases were referred to the Court for oral argument.  Identical motions, however, are pending in each of the nine captioned cases.  Therefore, this Order and Opinion shall be entered in each case.

[3]    The parties agree that each Plaintiff is a Virginia resident and that Thurston is a Virginia corporation.  Accordingly, there is no dispute that the parties are not diverse for purposes of federal court subject matter jurisdiction.

3

those defendants.  Settlement negotiations related to these suits took place between counsel for each individual Plaintiff and the Center for Claims Resolution ("CCR").  The CCR is a non-profit Delaware corporation which acted as the agent for Thurston and other asbestos manufacturers and suppliers for the purpose of negotiating the settlement of asbestos-related claims.  Pursuant to the Producer Agreement Concerning Center for Claims Resolution (the "Producer Agreement"), the member companies, including Thurston, granted the CCR authority to settle asbestos-related claims against them.

In November 1998 and July 1999, individual settlements were reached with the CCR in each Plaintiff's case.  Armstrong, A.P. Green Industries ("A.P. Green"), and GAF Corporation ("GAF") were members of the CCR at the time the settlement agreements were entered into, but those companies have defaulted on their settlement obligations in these cases as well as, apparently, in numerous other settlements throughout the country.  In particular, on December 6, 2000, Armstrong filed a voluntary petition for relief under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, which is currently pending before United States District Judge Joseph J. Farnan, Jr.  It appears that Armstrong's primary reason for seeking bankruptcy protection is its inability to pay the mounting asbestos-related claims against it.  On or about January 5, 2001, GAF filed for bankruptcy as well, also citing its inability to pay asbestos-related claims.[4]

Prior to April 2001, no payment related to the settlement agreements had been made by the CCR or by any of the member companies to the Plaintiffs.  On or about April 13, 2001,

---

[4]      It is not clear from the parties' pleadings in which court GAF filed its bankruptcy petition.

4

Plaintiffs in the Fink and Baker matters filed in state court motions to enforce the settlement agreements in which they sought full payment from Thurston, which appears to be the only remaining solvent obligor under these settlement agreements. Plaintiffs in the Mason case filed in Portsmouth Circuit Court a motion for judgment against Thurston asserting breach of contract claims with respect to their settlement agreements and, similarly, seeking full recovery from Thurston. Identical or similar motions have been filed in each of the above-captioned cases. After the filing of these motions in state court, the CCR tendered a partial payment to each Plaintiff in the amount that it calculated, pursuant to the Producer Agreement, to be Thurston's share under the settlement agreements.

On May 3, 2001, Thurston, pursuant to 28 U.S.C. § 1452(a), removed to federal court the motions to enforce settlement agreement in the Fink and Baker cases. On May 21, 2001, Thurston removed the motion for judgment filed in Mason. The removal notices in Fink and Baker make clear that the removal "applies only to the claims and/or causes of action raised by the settlement enforcement proceeding, and not to any asbestos personal injury claims or other matters pending in the state court case." Fink, Dkt. No. 1; Baker, Dkt. No 1 (emphasis in originals). Identical grounds for removal are cited in all nine cases. Thurston claims that each suit is one "arising under title 11, or arising in or related to [a case] under title 11," and, accordingly the Court possesses original jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b). In sum, the primary only outstanding issue raised in each of the removed enforcement proceedings is whether Thurston is, as a matter of contract law, jointly and severally liable for the total settlement amount set forth under the respective settlement agreements.

5

CutePDF - www.fasiio.com

## II.    Discussion

The three issues before the Court are (1) whether the removed enforcement actions are

sufficiently "related to" the Armstrong bankruptcy matter to vest this Court with subject matter

jurisdiction; (2) should the Court possess jurisdiction over the subject matter of these cases,

whether the Court, nevertheless, must abstain from hearing these matters to permit the state court

to adjudicate whether Thurston is jointly and severally liable, along with Armstrong and the other

relevant companies, for the entire settlement amount described in each of the settlement

agreements at issue; and (3) should the Court possess jurisdiction over the subject matter of these

cases and abstention not be mandatory, whether permissive abstention, nevertheless, would be in

the interests of justice.  The critical statutes for purposes of resolving these issues are 28 U.S.C §

1452 ("Section 1452") and 28 U.S.C. § 1334 ("Section 1334").

Section 1452, in pertinent part, provides as follows:

> **Removal of claims related to bankruptcy cases**
>
> (a) A party may remove any claim or cause of action in any civil
> action . . . to the district court for the district where such civil action
> is pending, *if such district court has jurisdiction of such claim or
> cause of action under section 1334 of this title.*
>
> (b) *The court to which such claim or cause of action is removed may
> remand such claim or cause of action on any equitable ground.*  An
> order entered under this subsection remanding a claim or cause of
> action, or a decision to not remand, is not reviewable by appeal or
> otherwise by the court of appeals under section 158(d), 1291, or 1292
> of this title or by the Supreme Court of the United States under
> section 1254 of this title.

28 U.S.C. § 1452 (emphasis added).  Section 1334, in relevant part, provides as follows:

6

**Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction over all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1334.

Thus, the Court has original, but not exclusive, jurisdiction over proceedings "arising in" or "related to" chapter 11 bankruptcy cases, while it possesses original and exclusive jurisdiction over bankruptcy cases "under" chapter 11. Further, even with respect to proceedings "arising in" or "related to" chapter 11 cases, abstention is required if (1) a party "in a proceeding based

7

upon a State law claim or State law cause of action" files a timely motion, (2) the action "could not have been commenced" in federal court absent bankruptcy jurisdiction under Section 1334, and (3) if the action was "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." See In re RBGSC Investment Corp., 253 B.R. 369, 381 (E.D. Pa. 2000). Finally, even in cases where mandatory abstention is not required, permissive abstention is an option "in the interests of justice, or in the interest of comity with State courts and respect for State law." 28 U.S.C. § 1334(c)(1).

### A.    Subject Matter Jurisdiction Under Section 1334

As set forth above, Section 1334(b) confers jurisdiction upon district courts in three circumstances – (1) cases "under" chapter 11, (2) proceedings "arising in" chapter 11 cases, and (3) proceedings "related to" chapter 11 cases. Thurston does not argue that the cases before the Court are actual bankruptcy proceedings "under" chapter 11, over which the Court would have original and exclusive jurisdiction. Rather, Thurston argues that subject matter jurisdiction over these cases exists under Section 1334(b) because, at the very least, these proceedings are "related to" the Armstrong bankruptcy case currently pending in federal court in Delaware. In A.H. Robins v. Piccinin, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986), the Fourth Circuit adopted the Third Circuit's test for determining the existence of "related to" jurisdiction under Section 1334. This test provides as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or

8

negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

Owens-Illinois, Inc. v. Rapid American Corp., 124 F.3d 619, 625-26 (4th Cir. 1997), quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). "Related to" jurisdiction under Section 1334(b) is broad because "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate . . . ." Id., at 625.

Thurston's primary argument in favor of a finding that these cases are "related to" the Armstrong bankruptcy petition is that, should Thurston be determined to be jointly and severally liable under the settlement agreements, Armstrong would be obligated under the Producer Agreement to indemnify Thurston for its share of the settlement payments to the Plaintiffs. In other words, the outcome of the removed enforcement actions has the potential to expose the Armstrong bankruptcy estate to indemnity claims by Thurston arising from the companies' joint and several obligations under the settlement agreements. In Owens-Illinois, the Fourth Circuit held that "related to" jurisdiction exists where contractual indemnity claims against the debtor are involved because "any recovery by [the plaintiff] against [the non-debtor] would impact the handling and administration of [the debtor's] bankruptcy estate by changing the character of the [non-debtor's] indemnification claim against [the debtor] from contingent and unliquidated to certain and liquidated." Owens Illinois, 124 F.3d at 626-27. Indeed, in finding that jurisdiction existed where "the outcome of the Contribution Action could conceivably have an effect on the Celotex bankruptcy case," the Fourth Circuit in Owens Illinois adopted a very broad and inclusive standard for "related to" jurisdiction where an indemnity agreement between the debtor

9

and a non-debtor may exist.  Id., at 626.

   Accordingly, a critical issue in the instant cases is whether any indemnity obligation on the part of Armstrong actually exists should Thurston be held jointly and severally liable to the Plaintiffs under the settlement agreements.  As evidence of the existence of an indemnity obligation between the CCR members, Thurston directs the Court's attention to Section VI of the Producer Agreement, which provides that "Liability payments and allocated expenses shall be apportioned to each [CCR member] . . . .  Such apportionment shall establish the responsibility of each [CCR member] for a percentage share of liability payments . . . .".  Thurston's Opposition, Ex. 5, Section VI.  Thurston also has submitted the declaration of Joseph Jordan, the Chief Financial Officer of the CCR, which states, "[u]nder the Producer Agreement, when a member company fails to pay its share, the other members have an automatic right to indemnity for any portion of that share they are forced to pay."  Thurston Opp., Ex. 1, ¶ 7.  Finally, Thurston argues that, at the very least, there exists an implied right to indemnity for Armstrong due to the "special relationship" between Thurston and Armstrong under the Producer Agreement.

   The Court finds that Section 1334 confers federal subject matter jurisdiction over the removed actions because Thurston has demonstrated a sufficient likelihood that it would have either an express or implied contractual right to indemnity from Armstrong under the Producer Agreement should Thurston be held jointly and severally liable under the settlement agreements.  Since the outcome of the Plaintiffs' settlement enforcement proceedings "could conceivably have an effect" on the Armstrong bankruptcy estate by triggering an indemnity obligation under the Producer Agreement, federal jurisdiction exists pursuant to Section 1334.

10

### B.    Mandatory Abstention

There are six antecedent requirements for mandatory abstention under Section 1344(c)(2). "First, there must be a timely motion for abstention and (second) the proceeding must be based upon a state law cause of action.  Third, the proceeding must be related to a case under title 11 and (fourth) the proceeding must not arise under title 11.  Fifth, the action must be one that could not have been commenced in federal court absent jurisdiction under [Section 1334], and, sixth, an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction."  RBGSC, 253 B.R. at 381.  The only one of these factors whose existence is in dispute is whether the enforcement actions constitute proceedings "arising under" chapter 11 of the bankruptcy code.  In other words, the issue is whether these cases, which likely implicate an indemnity obligation of the debtor Armstrong, are "core" to Armstrong's bankruptcy proceedings.  If these cases raise a "core" issue "arising under" chapter 11, then mandatory abstention is not appropriate.  Id.  On the other hand, if no "core" issue is raised, then abstention is required.

At 28 U.S.C. § 157(b)(2), "Congress set forth a non-inclusive list of categories of bankruptcy proceedings that constitute core proceedings."  Section 157(b)(2) lists the core proceedings that a bankruptcy judge may hear and determine under title 11.  The Supreme Court, however, has made clear that Article III places constitutional limitations on the scope of the bankruptcy courts' jurisdiction.  Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).  Thus, while many of the categories listed in

11

Section 157(b)(2) could be construed quite broadly,[5] such broad construction "risk[s] exceeding the constitutional limitations of Marathon." Finnman, 960 F.2d at 401; Humbolt Express, Inc. v. The Wise Company, Inc., 190 F.3d 624, 631 (4th Cir. 1999) ("a broad reading of the literal terms of [Section 157(b)(2)] could lead to the result that courts treat just about every dispute as 'core'"). Thus, under Marathon and Finnman, "core" proceedings are limited to those proceedings in which "[f]ederal bankruptcy judges are authorized to enter appropriate orders and judgments." Finnman., at 398. If the findings and conclusions of the bankruptcy judge in a proceeding would be subject to *de novo* review by the district court, then the proceeding is non-core. Id.

The Court finds that the contract disputes between the Plaintiffs and Thurston as to whether Thurston is subject to joint and several liability under the settlement agreements are non-core proceedings relative to the Armstrong bankruptcy. Thurston acknowledges that whether or not it is jointly and severally liable under the settlement agreements is a matter of Virginia contract law. It would make little sense to send these cases to Judge Farnan for a determination under Virginia law as to the issue of joint and several liability. Thurston may submit its indemnity claims against Armstrong in the Delaware bankruptcy proceedings should the state court determine that Thurston is jointly and severally liable for the entire settlement amounts due the Plaintiffs. The Court can discern no reasonable basis for requiring the Plaintiffs to proceed with their enforcement actions in that forum as well. Accordingly, the Court finds that abstention with respect to and remand of the above-captioned cases, which involve issues that are not "core"

---

[5]     See, e.g., 28 U.S.C. § 157(b)(2)(A) and (O) ("Core proceedings include, but are not limited to – matters concerning the administration of the estate . . . and other proceedings affecting the liquidation of the assets of the estate").

to the Armstrong bankruptcy, is required under Section 1344(c)(2).

### C.  Permissive Abstention

Finally, even if the dispute between Plaintiffs and Thurston as to whether joint and several liability exists under the settlement agreements were to be construed as "core" to the Armstrong bankruptcy proceeding, and thus not subject to mandatory abstention, "permissive" or "equitable" abstention under Section 1334(c) is appropriate in these cases. "[I]n considering whether equity requires abstention and remand, courts assess (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to jury trial, and (7) prejudice to the involuntarily removed [party]." RBGSC, 253 B.R., at 381-82.

These factors weigh heavily in favor of equitable abstention to permit the resolution of these matters in the state court. Indeed, the issue of joint and several liability between the CCR members under the settlement agreements may already have been resolved by the state courts in Crawley v. Armstrong World Industries, Inc., L93-1580 (Portsmouth Cir. Ct. June 8, 2000)  On June 8, 2000, Judge Cales of the Portsmouth Circuit Court held, inter alia, that CCR members were liable jointly and severally for the full amount of the settlement agreement in that case. Plaintiff's Motion to Remand, Ex. A.  On May 1, 2001, the Supreme Court of Virginia found that there was no reversible error in that case and rejected Thurston's petition for appeal. Id., Ex. B. Therefore, it would make little sense for the Court to transfer this case to federal court in Delaware for a determination by Judge Farnan, which would require an application of Virginia

contract law, when it seems that the state court is in a position to resolve that issue in these cases expeditiously.

Lastly, the Court is aware that various district courts have transferred at least four allegedly similar cases to the district court in Delaware for a determination by Judge Farnan as to whether remand to state court would be appropriate. See Defendant's Motion to Transfer, Ex. 1-3. Thurston urges the Court to follow those examples. None of the transfer orders entered in those case, however, offer any insight into the reasoning behind transfer. Rather it seems that in each case the court simply deferred to Judge Farnan with respect to whether remand would be appropriate. The Court has no knowledge of the particular facts and circumstances related to those cases. Based on the facts of the instant cases, however, transfer to Delaware strikes the Court as an unnecessarily dilatory approach to resolving Plaintiffs' state law claims related to the settlement agreements. Accordingly, even if abstention were not required in this case, the Court would decline to follow the example of the transfer cases cited by Thurston.

III.    **Conclusion**

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion to remand, and the Court **ORDERS** that each of the above-captioned cases be remanded to the state court from which they were removed. Defendant's motions to transfer are **DENIED**. Defendant's motions for extension of time in which to respond to Plaintiffs' motions to enforce the settlement agreements during the pendancy of its transfer motions are **GRANTED**. Defendant shall respond to Plaintiffs' motions for enforcement of the settlement agreements in accordance with the rules and procedures of the state court to which these cases are remanded.

The Clerk is **DIRECTED** to send copies of this Order and Opinion to all counsel of

14

record.

**IT IS SO ORDERED**.

UNITED STATES DISTRICT JUDGE

July _14_ 2001
Norfolk, Virginia

07/23/01  13:41 FAX 214 443 0358        STANLEY MANDEL & IOLA    → WATERS & KRAUS    ☑017 040

07/20/01  FRI 11:16 FAX 757 625 4115        GLASSER AND GLASSER                      ☑002

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

FILED

JUL 16 2001

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**PAULINE B. ADAMS, etc.,**
                    **Plaintiff,**

        v.                                          Civil Action No. 2:01cv321

**C.E THURSTON & SONS, INC,** *et al.*
                    **Defendants.**


**CYNTHIA L. BAKER, etc.,**
                    **Plaintiff,**

        v.                                          Civil Action No. 2:01cv323

**C.E THURSTON & SONS, INC,** *et al.*
                    **Defendants.**


**PHYLLIS ANN BALDWIN, etc.,**
                    **Plaintiff,**

        v.                                          Civil Action No. 2:01cv320

**C.E THURSTON & SONS, INC,** *et al.*
                    **Defendants.**


**NANCY C. CRAWFORD, etc.,**
                    **Plaintiff,**

        v.                                          Civil Action No. 2:01cv319

**C.E THURSTON & SONS, INC,** *et al.*
                    **Defendants.**

**MORRIS FINK,**
                    **Plaintiff,**
        v.                                          Civil Action No. 2:01cv315

**C.E THURSTON & SONS, INC,** *et al.*
                    **Defendants.**

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 72 of 133

**RAYMOND P. HINES,**
                    **Plaintiff,**

        v.                                                    **Civil Action No. 2:01cv317**

**C.E THURSTON & SONS, INC,** *et al.*
        **Defendants.**


**LORI MASON, etc.**
                **Plaintiff**

        v.                                                    **Civil Action No. 2:01cv363**

**C.E THURSTON & SONS, INC,** *et al.*
        **Defendants.**


**WILLIAM H. MONROE, Jr., etc.,**
                    **Plaintiff,**

        v.                                                    **Civil Action No. 2:01cv316**

**C.E THURSTON & SONS, INC,** *et al.*
        **Defendants.**


**NOREEN F. ROCHELLE, etc.,**
                    **Plaintiff,**

        v.                                                    **Civil Action No. 2:01cv318**

**C.E THURSTON & SONS, INC,** *et al.*
        **Defendants.**


**EZZY WYRON,**
                    **Plaintiff,**

        v.                                                    **Civil Action No. 2:01cv322**

**C.E THURSTON & SONS, INC,** *et al.*
        **Defendants.**

# ORDER AND OPINION

On June 25, 2001, the Court heard oral argument with respect to the following motions
filed in the above-referenced matters: (1) Defendant C.E. Thurston & Sons' ("Thurston")
motions to transfer; (2) Plaintiffs'[1] motions to remand or to abstain; and (3) Defendant's motions
for extension of time.[2]  Thurston removed each of the above-referenced cases from the Circuit
Court for the City of Portsmouth Virginia ("Portsmouth Circuit Court").  All the parties agree
that this Court is not the proper forum in which to have these removed actions resolved[3]
Plaintiffs argue in favor of remand to Portsmouth Circuit Court, while Thurston seeks the
transfer of these cases to the United States District Court for the District of Delaware where the
bankruptcy case of its alleged co-obligor, Armstrong World Industries, Inc. ("Armstrong"), is
pending.  For the reasons set forth below, the Court finds that remand of these cases to
Portsmouth Circuit Court is appropriate.

## I.      Factual and Procedural Background

Each of the individual Plaintiffs in these cases brought a state court action against
multiple defendants, including Thurston, seeking damages for personal injuries or wrongful death
alleged to have been caused by asbestos-containing products manufactured or distributed by

---

[1]      This Order and Opinion refers to the plaintiffs in these matters collectively as
"Plaintiffs."

[2]      Only the motions pending in the Fink, Mason and Baker cases were referred to the
Court for oral argument.  Identical motions, however, are pending in each of the nine captioned
cases.  Therefore, this Order and Opinion shall be entered in each case.

[3]      The parties agree that each Plaintiff is a Virginia resident and that Thurston is a
Virginia corporation.  Accordingly, there is no dispute that the parties are not diverse for
purposes of federal court subject matter jurisdiction.

3

07  23 01  13:41 FAX 214 443 0358        STANLEY MANDEL & IOLA     — WATERS & KRAUS     ☐ 020/040
                                                                                            ☐ 005
        07/20/01  FRI 11:17 FAX 757 625 4115        GLASSER AND GLASSER

those defendants.  Settlement negotiations related to these suits took place between counsel for each individual Plaintiff and the Center for Claims Resolution ("CCR").  The CCR is a non-profit Delaware corporation which acted as the agent for Thurston and other asbestos manufacturers and suppliers for the purpose of negotiating the settlement of asbestos-related claims.  Pursuant to the Producer Agreement Concerning Center for Claims Resolution (the "Producer Agreement"), the member companies, including Thurston, granted the CCR authority to settle asbestos-related claims against them.

In November 1998 and July 1999, individual settlements were reached with the CCR in each Plaintiff's case.  Armstrong, A.P. Green Industries ("A.P. Green"), and GAF Corporation ("GAF") were members of the CCR at the time the settlement agreements were entered into, but those companies have defaulted on their settlement obligations in these cases as well as, apparently, in numerous other settlements throughout the country.  In particular, on December 6, 2000, Armstrong filed a voluntary petition for relief under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Delaware, which is currently pending before United States District Judge Joseph J. Farnan, Jr.  It appears that Armstrong's primary reason for seeking bankruptcy protection is its inability to pay the mounting asbestos-related claims against it.  On or about January 5, 2001, GAF filed for bankruptcy as well, also citing its inability to pay asbestos-related claims.[4]

Prior to April 2001, no payment related to the settlement agreements had been made by the CCR or by any of the member companies to the Plaintiffs.  On or about April 13, 2001,

---

[4]        It is not clear from the parties' pleadings in which court GAF filed its bankruptcy petition.

4

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 75 of 133

Plaintiffs in the Fink and Baker matters filed in state court motions to enforce the settlement agreements in which they sought full payment from Thurston, which appears to be the only remaining solvent obligor under these settlement agreements. Plaintiffs in the Mason case filed in Portsmouth Circuit Court a motion for judgment against Thurston asserting breach of contract claims with respect to their settlement agreements and, similarly, seeking full recovery from Thurston. Identical or similar motions have been filed in each of the above-captioned cases. After the filing of these motions in state court, the CCR tendered a partial payment to each Plaintiff in the amount that it calculated, pursuant to the Producer Agreement, to be Thurston's share under the settlement agreements.

On May 3, 2001, Thurston, pursuant to 28 U.S.C. § 1452(a), removed to federal court the motions to enforce settlement agreement in the Fink and Baker cases. On May 21, 2001, Thurston removed the motion for judgment filed in Mason. The removal notices in Fink and Baker make clear that the removal "applies only to the claims and/or causes of action raised by the settlement enforcement proceeding, and not to any asbestos personal injury claims or other matters pending in the state court case." Fink, Dkt. No. 1; Baker, Dkt. No 1 (emphasis in originals). Identical grounds for removal are cited in all nine cases. Thurston claims that each suit is one "arising under title 11, or arising in or related to [a case] under title 11," and, accordingly the Court possesses original jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b). In sum, the primary only outstanding issue raised in each of the removed enforcement proceedings is whether Thurston is, as a matter of contract law, jointly and severally liable for the total settlement amount set forth under the respective settlement agreements.

II.   **Discussion**

The three issues before the Court are (1) whether the removed enforcement actions are

sufficiently "related to" the Armstrong bankruptcy matter to vest this Court with subject matter

jurisdiction; (2) should the Court possess jurisdiction over the subject matter of these cases,

whether the Court, nevertheless, must abstain from hearing these matters to permit the state court

to adjudicate whether Thurston is jointly and severally liable, along with Armstrong and the other

relevant companies, for the entire settlement amount described in each of the settlement

agreements at issue; and (3) should the Court possess jurisdiction over the subject matter of these

cases and abstention not be mandatory, whether permissive abstention, nevertheless, would be in

the interests of justice.  The critical statutes for purposes of resolving these issues are 28 U.S.C §

1452 ("Section 1452") and 28 U.S.C. § 1334 ("Section 1334").

Section 1452, in pertinent part, provides as follows:

> **Removal of claims related to bankruptcy cases**
>
> (a) A party may remove any claim or cause of action in any civil
> action . . . to the district court for the district where such civil action
> is pending, *if such district court has jurisdiction of such claim or
> cause of action under section 1334 of this title.*
>
> (b) *The court to which such claim or cause of action is removed may
> remand such claim or cause of action on any equitable ground.* An
> order entered under this subsection remanding a claim or cause of
> action, or a decision to not remand, is not reviewable by appeal or
> otherwise by the court of appeals under section 158(d), 1291, or 1292
> of this title or by the Supreme Court of the United States under
> section 1254 of this title.

28 U.S.C. § 1452 (emphasis added).  Section 1334, in relevant part, provides as follows:

**Bankruptcy cases and proceedings**

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction over all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1334.

Thus, the Court has original, but not exclusive, jurisdiction over proceedings "arising in" or "related to" chapter 11 bankruptcy cases, while it possesses original and exclusive jurisdiction over bankruptcy cases "under" chapter 11.   Further, even with respect to proceedings "arising in" or "related to" chapter 11 cases, abstention is required if (1) a party "in a proceeding based

7

upon a State law claim or State law cause of action" files a timely motion, (2) the action "could not have been commenced" in federal court absent bankruptcy jurisdiction under Section 1334, and (3) if the action was "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." See In re RBGSC Investment Corp., 253 B.R. 369, 381 (E.D. Pa. 2000). Finally, even in cases where mandatory abstention is not required, permissive abstention is an option "in the interests of justice, or in the interest of comity with State courts and respect for State law." 28 U.S.C. § 1334(c)(1).

### A.   Subject Matter Jurisdiction Under Section 1334

As set forth above, Section 1334(b) confers jurisdiction upon district courts in three circumstances – (1) cases "under" chapter 11, (2) proceedings "arising in" chapter 11 cases, and (3) proceedings "related to" chapter 11 cases.  Thurston does not argue that the cases before the Court are actual bankruptcy proceedings "under" chapter 11, over which the Court would have original and exclusive jurisdiction.  Rather, Thurston argues that subject matter jurisdiction over these cases exists under Section 1334(b) because, at the very least, these proceedings are "related to" the Armstrong bankruptcy case currently pending in federal court in Delaware.  In A.H. Robins v. Piccinin, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986), the Fourth Circuit adopted the Third Circuit's test for determining the existence of "related to" jurisdiction under Section 1334. This test provides as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.  Thus, the proceeding need not necessarily be against the debtor or the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or

8

> negatively) and which in any way impacts upon the handling and
> administration of the bankruptcy estate.

Owens-Illinois. Inc. v. Rapid American Corp., 124 F.3d 619, 625-26 (4th Cir. 1997), quoting

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original).   "Related to"

jurisdiction under Section 1334(b) is broad because "Congress intended to grant comprehensive

jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all

matters connected with the bankruptcy estate . . . ." Id., at 625.

Thurston's primary argument in favor of a finding that these cases are "related to" the

Armstrong bankruptcy petition is that, should Thurston be determined to be jointly and severally

liable under the settlement agreements, Armstrong would be obligated under the Producer

Agreement to indemnify Thurston for its share of the settlement payments to the Plaintiffs.  In

other words, the outcome of the removed enforcement actions has the potential to expose the

Armstrong bankruptcy estate to indemnity claims by Thurston arising from the companies' joint

and several obligations under the settlement agreements.  In Owens-Illinois, the Fourth Circuit

held that "related to" jurisdiction exists where contractual indemnity claims against the debtor are

involved because "any recovery by [the plaintiff] against [the non-debtor] would impact the

handling and administration of [the debtor's] bankruptcy estate by changing the character of the

[non-debtor's] indemnification claim against [the debtor] from contingent and unliquidated to

certain and liquidated." Owens Illinois, 124 F.3d at 626-27.  Indeed, in finding that jurisdiction

existed where "the outcome of the Contribution Action could conceivably have an effect on the

Celotex bankruptcy case," the Fourth Circuit in Owens Illinois adopted a very broad and

inclusive standard for "related to" jurisdiction where an indemnity agreement between the debtor

<center>9</center>

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 80 of 133

and a non-debtor may exist. Id., at 626.

Accordingly, a critical issue in the instant cases is whether any indemnity obligation on the part of Armstrong actually exists should Thurston be held jointly and severally liable to the Plaintiffs under the settlement agreements. As evidence of the existence of an indemnity obligation between the CCR members, Thurston directs the Court's attention to Section VI of the Producer Agreement, which provides that "Liability payments and allocated expenses shall be apportioned to each [CCR member] . . . . Such apportionment shall establish the responsibility of each [CCR member] for a percentage share of liability payments . . . .". Thurston's Opposition, Ex. 5, Section VI. Thurston also has submitted the declaration of Joseph Jordan, the Chief Financial Officer of the CCR, which states, "[u]nder the Producer Agreement, when a member company fails to pay its share, the other members have an automatic right to indemnity for any portion of that share they are forced to pay." Thurston Opp., Ex. 1, ¶ 7. Finally, Thurston argues that, at the very least, there exists an implied right to indemnity for Armstrong due to the "special relationship" between Thurston and Armstrong under the Producer Agreement.

The Court finds that Section 1334 confers federal subject matter jurisdiction over the removed actions because Thurston has demonstrated a sufficient likelihood that it would have either an express or implied contractual right to indemnity from Armstrong under the Producer Agreement should Thurston be held jointly and severally liable under the settlement agreements. Since the outcome of the Plaintiffs' settlement enforcement proceedings "could conceivably have an effect" on the Armstrong bankruptcy estate by triggering an indemnity obligation under the Producer Agreement, federal jurisdiction exists pursuant to Section 1334.

<div align="center">10</div>

B.     **Mandatory Abstention**

There are six antecedent requirements for mandatory abstention under Section 1344(c)(2). "First, there must be a timely motion for abstention and (second) the proceeding must be based upon a state law cause of action. Third, the proceeding must be related to a case under title 11 and (fourth) the proceeding must not arise under title 11. Fifth, the action must be one that could not have been commenced in federal court absent jurisdiction under [Section 1334], and, sixth, an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." RBGSC, 253 B.R. at 381. The only one of these factors whose existence is in dispute is whether the enforcement actions constitute proceedings "arising under" chapter 11 of the bankruptcy code. In other words, the issue is whether these cases, which likely implicate an indemnity obligation of the debtor Armstrong, are "core" to Armstrong's bankruptcy proceedings. If these cases raise a "core" issue "arising under" chapter 11, then mandatory abstention is not appropriate. Id. On the other hand, if no "core" issue is raised, then abstention is required.

At 28 U.S.C. § 157(b)(2), "Congress set forth a non-inclusive list of categories of bankruptcy proceedings that constitute core proceedings." Section 157(b)(2) lists the core proceedings that a bankruptcy judge may hear and determine under title 11. The Supreme Court, however, has made clear that Article III places constitutional limitations on the scope of the bankruptcy courts' jurisdiction. Northern Pipeline Constr. Co, v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Thus, while many of the categories listed in

11

CUtePDF - www.fovina.com

Section 157(b)(2) could be construed quite broadly,[5] such broad construction "risk[s] exceeding the constitutional limitations of Marathon." Finnman, 960 F.2d at 401; Humbolt Express, Inc. v. The Wise Company, Inc., 190 F.3d 624, 631 (4th Cir. 1999) ("a broad reading of the literal terms of [Section 157(b)(2)] could lead to the result that courts treat just about every dispute as 'core'"). Thus, under Marathon and Finnman, "core" proceedings are limited to those proceedings in which "[f]ederal bankruptcy judges are authorized to enter appropriate orders and judgments." Finnman., at 398. If the findings and conclusions of the bankruptcy judge in a proceeding would be subject to de novo review by the district court, then the proceeding is non-core. Id.

The Court finds that the contract disputes between the Plaintiffs and Thurston as to whether Thurston is subject to joint and several liability under the settlement agreements are non-core proceedings relative to the Armstrong bankruptcy. Thurston acknowledges that whether or not it is jointly and severally liable under the settlement agreements is a matter of Virginia contract law. It would make little sense to send these cases to Judge Farnan for a determination under Virginia law as to the issue of joint and several liability. Thurston may submit its indemnity claims against Armstrong in the Delaware bankruptcy proceedings should the state court determine that Thurston is jointly and severally liable for the entire settlement amounts due the Plaintiffs. The Court can discern no reasonable basis for requiring the Plaintiffs to proceed with their enforcement actions in that forum as well. Accordingly, the Court finds that abstention with respect to and remand of the above-captioned cases, which involve issues that are not "core"

---

[5]     See, e.g., 28 U.S.C. § 157(b)(2)(A) and (O) ("Core proceedings include, but are not limited to – matters concerning the administration of the estate . . . and other proceedings affecting the liquidation of the assets of the estate").

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 83 of 133

to the Armstrong bankruptcy, is required under Section 1344(c)(2).

### C.    Permissive Abstention

Finally, even if the dispute between Plaintiffs and Thurston as to whether joint and several liability exists under the settlement agreements were to be construed as "core" to the Armstrong bankruptcy proceeding, and thus not subject to mandatory abstention, "permissive" or "equitable" abstention under Section 1334(c) is appropriate in these cases. "[I]n considering whether equity requires abstention and remand, courts assess (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to jury trial, and (7) prejudice to the involuntarily removed [party]." RBGSC, 253 B.R., at 381-82.

These factors weigh heavily in favor of equitable abstention to permit the resolution of these matters in the state court. Indeed, the issue of joint and several liability between the CCR members under the settlement agreements may already have been resolved by the state courts in Crawley v. Armstrong World Industries, Inc., L93-1580 (Portsmouth Cir. Ct. June 8, 2000). On June 8, 2000, Judge Cales of the Portsmouth Circuit Court held, inter alia, that CCR members were liable jointly and severally for the full amount of the settlement agreement in that case. Plaintiff's Motion to Remand, Ex. A. On May 1, 2001, the Supreme Court of Virginia found that there was no reversible error in that case and rejected Thurston's petition for appeal. Id., Ex. B. Therefore, it would make little sense for the Court to transfer this case to federal court in Delaware for a determination by Judge Farnan, which would require an application of Virginia

13

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 84 of 133

contract law, when it seems that the state court is in a position to resolve that issue in these cases expeditiously.

Lastly, the Court is aware that various district courts have transferred at least four allegedly similar cases to the district court in Delaware for a determination by Judge Farnan as to whether remand to state court would be appropriate. See Defendant's Motion to Transfer, Ex. 1-3. Thurston urges the Court to follow those examples. None of the transfer orders entered in those case, however, offer any insight into the reasoning behind transfer. Rather it seems that in each case the court simply deferred to Judge Farnan with respect to whether remand would be appropriate. The Court has no knowledge of the particular facts and circumstances related to those cases. Based on the facts of the instant cases, however, transfer to Delaware strikes the Court as an unnecessarily dilatory approach to resolving Plaintiffs' state law claims related to the settlement agreements. Accordingly, even if abstention were not required in this case, the Court would decline to follow the example of the transfer cases cited by Thurston.

**III.   Conclusion**

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion to remand, and the Court **ORDERS** that each of the above-captioned cases be remanded to the state court from which they were removed. Defendant's motions to transfer are **DENIED**. Defendant's motions for extension of time in which to respond to Plaintiffs' motions to enforce the settlement agreements during the pendancy of its transfer motions are **GRANTED**. Defendant shall respond to Plaintiffs' motions for enforcement of the settlement agreements in accordance with the rules and procedures of the state court to which these cases are remanded.

The Clerk is **DIRECTED** to send copies of this Order and Opinion to all counsel of

14

record.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

July _16_ 2001
Norfolk, Virginia

15

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 86 of 133

VIRGINIA:  IN THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH

DONALD IVAN CRAWLEY

      Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., and

C. E. THURSTON & SONS, INC., and

GAF CORPORATION

      Defendants.

At Law No. L93-1580

## FINAL JUDGMENT ORDER

THIS CAUSE CAME TO BE HEARD upon the Plaintiff's Motion to Enforce Settlement Agreement, and was argued by counsel.

Based on the evidence and arguments presented, the Court makes the following findings of fact:

1  At all relevant times, up to and including December 10, 1999, the Center for Claims Resolution (hereafter, the "CCR") was acting as the authorized agent for a group of asbestos manufacturers and/or suppliers with authority to settle asbestos-related claims made against its members, including the claim made by the plaintiff herein, Donald Ivan Crawley, for asbestos-related personal injuries.

2.  At all relevant times, up to and including December 10, 1999, the principals for which the CCR was authorized to act were disclosed, and specifically included **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**, as well as other members.

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 87 of 133

3. On December 10, 1999, plaintiff settled his claim in this lawsuit with the CCR, as agent for **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**, and all other members, and it was agreed, inter alia, that plaintiff would receive a payment of ▓▓▓▓▓▓ as consideration for executing a "Limited Release and Covenant not to Sue" (hereafter, "Limited Release") in favor of all CCR members, including **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**. The terms of this settlement were confirmed by Robert D. Capritti on behalf of the CCR and its members by letter dated December 10, 1999. The agreed settlement amount of ▓▓▓▓▓▓ was due to have been paid ninety days from December 10, 1999, which is on or before March 9, 2000.

4. Plaintiff provided all documentation as required by the settlement in a timely manner, including the "Limited Release" appended hereto, which was prepared by the defendants' agent, the CCR, and duly signed by the plaintiff.

5. After the settlement was reached (for reasons unrelated to the plaintiff) defendant **GAF Corporation** either voluntarily withdrew from, or was involuntarily expelled from, the CCR.

6. Plaintiff received a letter, dated March 15, 2000, and a check in the amount of ▓▓▓▓▓▓, which said amount is ▓▓▓▓▓▓ less than the agreed settlement.

7. There remains owing to the plaintiff by the defendants, **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**, jointly and severally, the amount of ▓▓▓▓▓▓, which said amount was due and payable on or before March 9, 2000; wherefore it is

ADJUDGED, ORDERED AND DECREED, that Plaintiff, Donald Ivan Crawley, is hereby granted judgment in the amount of ▓▓▓▓▓▓, together with interest at the judgment rate from March 10, 2000, ~~and costs and attorney's fees until amount of~~

Glasser and Glasser, P.L.C.
Dominion Tower,
valerado Drive, Suite 600
orfolk, Virginia 23510
(757) 625-6787

2

against **Armstrong World Industries, Inc., C. E. Thurston & Sons, Inc. and GAF Corporation**, jointly and severally; and it is further

ADJUDGED, ORDERED AND DECREED, that the plaintiff is hereby awarded immediate execution on this judgment; and it is further

ADJUDGED, ORDERED, AND DECREED, except as provided in this Order, that the foregoing defendants are released from further liability to the Plaintiff, but only to the extent provided by the "Limited Release and Covenant Not to Sue" which was prepared on behalf of the defendants by their agent and signed by the Plaintiff, and which is attached hereto and incorporated herein as if set forth verbatim.

Entered this ____ day of _____, 2000.

_____
JUDGE

I ASK FOR THIS:

_____
Richard S. Glasser, Esquire
Steven L. Lauer, Esquire
Glasser & Glasser, P.L.C.
999 Waterside Drive
Suite 600
Norfolk, Virginia 23510
(757) 625-6787
Counsel for Plaintiff

A copy Teste: Walter M. Edmonds, Clerk of the Circuit
Court of the City of Portsmouth, Virginia

By_____ D.C.

Glasser and Glasser, P.L.C.
Dominion Tower
Waterside Drive, Suite 600
Norfolk, Virginia 23510
(757) 625-6787

3

940100006?
VA

## LIMITED RELEASE AND COVENANT NOT TO SUE

THIS AGREEMENT is a Release and Covenant Not to Sue executed on the _17th_ day of _January_ , _2000_ , by DON CRAWLEY, Social Security No. 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, and BETH O. CRAWLEY (hereinafter referred to as "Covenantors"), and by members of the Center for Claims Resolution, more specifically: Amchem Products, Inc.; Armstrong World Industries, Inc.; The Asbestos Claims Management Corporation (formerly known as National Gypsum Company) and the NGC Asbestos Disease and Property Damage Settlement Trust; CertainTeed Corporation; C.E. Thurston & Sons, Inc.; Dana Corporation; Ferodo America, Inc.; Gasket Holdings, Inc. (f/k/a Flexitallic, Inc.).; GAF Corporation; I.U. North America, Inc.;  Maremont Corporation; National Service Industries, Inc.; NOSROC Corp.; Pfizer Inc.; Quigley Company, Inc.; Shook & Fletcher Insulation Co.; T&N, plc; Union Carbide Corporation (f/k/a Union Carbide Chemicals & Plastics Company, Inc.); and United States Gypsum Company; (hereinafter referred to as "Covenantees").

## W I T N E S S E T H:

In consideration of the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, paid to DON CRAWLEY and BETH O. CRAWLEY and their attorney, CHARLOTTE E. VAUGHN, ESQ., the receipt of which is hereby acknowledged, the parties do hereby enter into this Release and Covenant Not to Sue as follows:

Covenantors will not institute, maintain or prosecute any action or suit at law or in equity against (a) Covenantees and/or any accrual and/or alleged parent corporations, subsidiaries, predecessors, and successors, and their respective present and former parent corporations, subsidiary corporations, successor corporations, predecessor corporations, and affiliated corporations; (b) any of the aforesaid or above-described corporations' present and former successors, predecessors, and assigns; and/or (c) present and former insurance carriers, directors, officers, agents, servants, employees, and stockholders of all such heretofore described entities; for any claim, demand, action or cause of action, civil or maritime, including any claim for consortium, loss of society, care, services, support or companionship, whether developed or undeveloped, resulting or to result, known or unknown, past, present or future, for, or arising out of, the disease of pulmonary asbestosis due to DON CRAWLEY's exposure at any time during his lifetime to any asbestos products manufactured, sold or distributed by the Covenantees. Covenantors further agree to dismiss with prejudice the action pending in the CIRCUIT COURT in 3RD CIRCUIT PORTSMOUTH, VIRGINIA,  DOCKET#: L931580, as to the above Covenantees.

1

Covenantors and Covenantees agree that the Covenantors specifically reserve all rights of action, claims and demands against any and all persons, firms, and/or corporations, including the Covenantees, their parents, subsidiaries, predecessors, and successors, for personal injury or death resulting from mesothelioma, lung cancer, primary colon-rectal, laryngeal, esophageal or stomach cancer which was not alleged in the existing cause of action allegedly resulting or to result from DON CRAWLEY's exposure to any asbestos products mined, manufactured, sold or distributed by the Covenantees.

It is understood by the Covenantors that the payment hereunder is not to be construed as an admission of liability on the part of the Covenantees, by whom liability has been expressly denied.

Covenantors expressly reserve all rights of action, claims, and demands against any and all persons, firms or corporations other than the Covenantees and/or Covenantees' actual and/or alleged parent corporations, subsidiary, predecessor, successors, officers, directors, and employees.

Covenantors further expressly reserve all rights of action, claims, and demands against any and all persons, firms, or corporations, including the Covenantees, their parents, subsidiaries, predecessors, and successors, by reason of any personal injury arising out of BETH O. CRAWLEY's exposure to any asbestos product mined, manufactured, sold, or distributed by any and all persons, firms or corporations, including the Covenantees.

It is agreed by and between Covenantors and Covenantees that the sum of One Dollar and 00/100 ($1.00), and other good and valuable consideration, is the sum being paid in good faith to the Covenantors, DON CRAWLEY and BETH O. CRAWLEY, by the Covenantees in consideration of the execution of this Agreement. This Covenant shall inure to the benefit of the Covenantees and it shall bind Covenantors, their heirs and legal representatives.

Covenantors and Covenantees agree that this Release and Covenant Not to Sue is executed under Section 8.01-35.1, Code of Virginia as amended.   It is expressly understood that this provision does not alter the finality of the settlement set forth herein, and in no event shall Covenantees be liable for any additional payment to Covenantors for, or as a consequence of, pulmonary asbestosis of DON CRAWLEY. If Covenantees are found liable for any injury for, or as a consequence of, pulmonary asbestosis due to DON CRAWLEY's exposure to asbestos products manufactured by Covenantees, the Covenantors will indemnify Covenantees for any such loss.

Covenantors agree to assume full responsibility to discharge or otherwise satisfy any claim or lien for reimbursement of payments or disbursements made to, or on behalf of DON CRAWLEY for, or as a consequence of, pulmonary asbestosis under any Workmen's or Employee's Compensation program and/or retirement programs and/or

medical insurance or reimbursement plan, and it is understood that Covenantees have no responsibility for the same and that Covenantors will hold Covenantees harmless from any such claim.

Covenantors agree that, except for separate settlement agreements, all amounts recovered in judgment by Covenantors against any other persons, firms, or corporations jointly or severally liable to Covenantors for any claims for injuries and damages as a consequence of DON CRAWLEY's exposure to asbestos products, shall be reduced by the amount of settlement.

Covenantors have carefully read this Release and Covenant Not to Sue and understand the contents thereof and agree thereto.

This instrument reflects the entire Covenant between Covenantors and Covenantees and no statements, promises or inducements made by the parties hereto that are not contained herein shall be valid or binding.

IN WITNESS WHEREOF, Covenantors have executed this Covenant Not to Sue on the date above written.


_____
DON CRAWLEY
Social Security No. 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


_____
BETH O. CRAWLEY


Subscribed And Sworn
before me this 17 Day
of Jan 00.


_____
Lynn O Rothwell
Notary

My Commission Expires:
4-30-00


3

07-23/01  13:43 FAX 214 443 0358        STANLEY MANDEL & IOLA    → WATERS & KRAUS        ☒039 040

07/20/01  FRI 11:29 FAX 757 625 4115        GLASSER AND GLASSER        ☒02↴

STATE OF VIRGINIA

CITY/COUNTY OF _Isl. of Wght_ to-wit.

        The foregoing Covenant Not to Sue was acknowledged and subscribed to before
me on this _12_ day of _January_, _2000_, by DON CRAWLEY and
BETH O. CRAWLEY.

NOTARY PUBLIC

My Commission expires: _4/30/00_

VAXXHWLC
December 22, 1999
1:48 PM

-4-

# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Tuesday *the* 1st *day of* May, 2001.

Armstrong World Industries,
 Inc., et al.,                                          Appellants,

   against        Record No. 002209
                  Circuit Court No. L93-1580

Donald Ivan Crawley,                                    Appellee.

        From the Circuit Court of the City of Portsmouth

        Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court is of opinion there is no reversible error in the judgment complained of as to C.E. Thurston and Sons, Inc. Accordingly, the Court refuses the petition for appeal as to that appellant.

                              A Copy,

                              Teste:

                                    David B. Beach, Clerk

                              By: *Wendy A. Duck*

                                    Deputy Clerk

SEEN: *I objection to*

Counsel for Defendant Armstrong World Industries, Inc. *, motion Center for claims Resolution*

SEEN: *I objected to*

Counsel for Defendant C. E. Thurston & Sons, Inc. *, motion, Center for claims Resolution*

SEEN:
*and objected to*

Counsel for Defendant GAF Corporation

Glasser and Glasser, P.L.C
Dominion Tower
9~ ~aterside Drive, Suite 600
~rfolk, Virginia 23510
(757) 625-6787

4

CVisPDF – www.fastio.com

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

DEC 19 2000

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

PATRICIA PAINTER and JERRY
PAINTER, Individually and as Wrongful
Death Beneficiaries of Bennie Painter,

          Plaintiffs,

v.

CERTAINTEED CORP., T&N, PLC., and
UNITED STATES GYPSUM CO.,

          Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 3:00-CV-2714-M

ENTERED ON DOCKET

DEC 2 0 2000

U.S. DISTRICT CLERK'S OFFICE

ORDER

The Court has before it Plaintiffs' Motion for Expedited Remand, filed on December 15,
2000 in the above-entitled case, and Removing Defendants' Motion to Transfer to the District of
Delaware, filed on December 18, 2000. Having considered the motions, applicable law and
arguments of counsel at a hearing held on December 18, 2000, the Court is of the opinion that,
for reasons stated on the record in open court, Plaintiffs' Motion for Expedited Remand should
be GRANTED and Defendants' Motion to Transfer should be DENIED as moot. The Court,
however, will not assess costs against Defendants.

The Court hereby REMANDS this case to the Dallas County Court at Law No. 3 and the
Clerk of Court is hereby ORDERED to effect the remand in the usual manner.

SO ORDERED.

DATED: December 19, 2000.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

6



EXHIBIT

G

`REDACTED`

1

    04    1                IN THE UNITED STATES DISTRICT COURT
          2                FOR THE NORTHERN DISTRICT OF TEXAS
          3                          DALLAS DIVISION

          3
                PATRICIA PAINTER AND JERRY      (   CIVIL ACTION NUMBER
          4     PAINTER, et al.                 (
                            Plaintiff,          (
          5                                      (   3:00-CV-2714-M
                VERSUS                           (
          6                                      (
                CERTAINTEED CORP. T&N, PLC,      (   December 18, 2000
          7     UNITED STATES GYPSUM CO.         (
                            Defendant.           (   2:30 p.m.
  1:12:04 8

          9                   TRANSCRIPT OF MOTIONS HEARING
                       BEFORE THE HONORABLE BARBARA M.G. LYNN
         10                 UNITED STATES DISTRICT JUDGE

         11    A P P E A R A N C E S:

         12    FOR THE PLAINTIFF:        KAY GUNDERSON REEVES
                                         JUDY BRADSHAW
         13                              MEGAN KRAMER
                                         KAESKE - REEVES LLP
         14                              6301 Gaston Avenue, Suite 735
                                         Dallas, Texas 75214
         15                                   214.821.1221

         16

         17    FOR THE DEFENDANT:        GARY D. ELLISTON
                                         DEHAY & ELLISTON LLP
         18                              3500 Bank of America Plaza
                                         901 Main Street
         19                              Dallas, Texas 75202-3736
                                              214.210.2400
         20
                                         LAWRENCE GERMER
         21                              GERMER BERNSEN & GERTZ LLP
                                         805 Park Street
         22                              Beaumont, Texas 77701
                                              409.828.2080
         23

         24

         25


                          P. SUE ENGLEDOW CSR/RPR
                     FEDERAL DISTRICT COURT - DALLAS, TEXAS

2

1    COURT REPORTER:        P. SUE ENGLEDOW RPR/CSR NO. 1170

2                                P.O. Box 1247

3                                  Red Oak, Texas 75154
                                      214/753-2325

4       Proceedings reported by mechanical stenography,
    transcript produced by computer.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
04  1            P R O C E E D I N G S
        2                December 18, 2000
        3                   2:30 p.m.
                         MOTIONS HEARING

        4        (Judge enters courtroom.)

        5        (Court opening.)

        6            THE COURT:  Good afternoon everyone.  I appreciate
        7    everybody coming by on such short notice.

        8        We're here on Painter versus Certainteed Corporation,
        9    cause number 3:00-CV-2714-M.  We're here on the motion filed
       10    by the plaintiffs for remand, the response to the motion for
       11    remand, and a motion to transfer to Delaware where the
       12    Armstrong bankruptcy is pending.

1:54:30 13        Let me have the announcements first for the plaintiff,
       14    please.

       15            MS. REEVES:  Yes, your Honor.  Kay Reeves appearing
       16    on behalf of the plaintiffs Painter.

       17            THE COURT:  For the defendant?

       18            MR. ELLISTON:  Gary Elliston and Larry Germer on
       19    behalf of the defendants, your Honor.

       20            THE COURT:  Thank you.

       21        Mr. Germer, I appreciate your coming up on such short
       22    notice.

       23        For the record, we had a conference call on Friday in
       24    which Ms. Reeves and Mr. Germer and I participated.  I think
       25    you all have met my law clerk, Raman Gill, who also was
```

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 100 of 133

4

1   present during the call.

2        I have received filings by the defendants since our

3   Friday telephone conference pursuant to my request.  Those

4   have been served on you, have they not, Ms. Reeves?

5              MS. REEVES:  Yes, your Honor, they have.

6              THE COURT:  So we're here on the motion to remand

7   and then I'll hear from the defendants on their response and

8   their motion to transfer.

9        I'll hear from you first, Ms. Reeves.

10             MS. REEVES:  Thank you, your Honor.  As set forth in

11   my brief, and as we discussed on Friday, I have a three

12   pronged -- three prongs to support my motion for remand.

13        First, the jurisdictional facts alleged in the notice of

14   removal were incorrect, in the first place.  There is nothing

15   in the underlying motion that was removed from state -- County

16   Court at Law Number 3 that impacted in any way the estate, the

17   right, the obligations of the bankrupt.  The underlying motion

18   was a motion to compel settlement funds.  It did not mention a

19   bankrupt party, did not allege joint conduct by a bankrupt

20   party, did not allege joint and several liability between the

21   defendants, the removing defendants here, and any bankrupt

22   entity.

23        And I would note at this point that that is one key

24   ground on which this case is distinct from the Wood case

25   relied upon heavily by the movant and defendant.

5

| | |
|---|---|
| 30 | 1 |

1   This is not a case where I have brought the removed

2   mot:on against a party alleging that they have joint conduct

3   and that that joint conduct is the substance of the instant

4   mot:on against these defendants.

5          THE COURT:  Well, let me step ahead for a minute.

6   Let s get to the point, as I understand what the point is

7   her'.  I mean, what will happen here, as I understand it, if I

8   rem.nd this case, there will be a hearing before Judge

9   Jen vein in County Court Number 3, the plaintiffs will be

10  tak ng the position that the full settlement amount, which in

11  the documents I have shows up as                    Am I

12  rem:mbering that correct?

13         MS. REEVES:  Correct, your Honor.

14         THE COURT:  A portion of which is allocable to these

1:57:30   15  pla ntiffs, but that number is ascertainable not from the

16  pap rs, but from what you have represented to me, that that's

17  an llocation that's been made by plaintiffs' counsel among

18  a v riety of plaintiffs, these plaintiffs and others.  That

19  amc nt is not reflected in the documents that I have before

20  me.  It's in the $

21         MS. REEVES:  That's correct, your Honor, although I

22  wot ld say that ·               was consideration for the entire

23  agr ement, including the settlement, so what was out to

24  Mr. Painter.  So what was allocated to the Painters --

25         THE COURT:  That's your internal business.  My point

Case 1:01-cv-00180  Document 7  Filed in TXSD on 10/31/2001  Page 102 of 133

1    is, I don't want the record to be misstated. There is not an

2    agreement that you're trying to enforce before Judge Jenevein

3    to get $ .        for the Painters, or are you?

4          MS. REEVES: Well, the settlement agreement was a

5    settlement agreement for the Painters' claims, consideration

6    of which was the settlement of nine additional claims for a

7    total.

8          THE COURT: What are you going to be asking Judge

9    Jenevein to do?

10         MS. REEVES: We have asked Judge Jenevein to compel

11    the removing parties to either pay the full amount of the

12         ..., or to compel CCR, their agent, to pay that

13    money. The CCR is the sole and exclusive party that

14    negotiated the settlement amount and has exclusive right to do

15    that and to make payment to the plaintiffs.

16        CCR is not itself a party to the underlying action, we do

17    not believe that the Court can enter a judgment against CCR,

18    and we will not be asking them to do that, but these

19    defendants can be ordered to compel their agent to pay the

20    funds to us.

21         THE COURT: Well, the original motion to compel,

22    which is attached to the notice of removal, was in fact a

23    motion to compel CCR, the Center for Claims Resolution, to

24    settle pursuant to the terms of that. And that motion says

25    the agreement indicated that the plaintiffs would settle their

1    claims as against CCR in return for payment in the amount of

2    $      .  That's what the original motion says.

3        There is now an amended motion which I had received

4    subsequent to the initial notice of removal, I believe, as an

5    attachment to your papers.

6            MS. REEVES:  Yes, your Honor.

7            THE COURT:  And it reflects -- Ms. Reeves, if you

8    can direct me to it.

9            MS. REEVES:  Your Honor, the amended motion was

10   filed in large part because we felt that the original motion

11   was really not correct on what the terms of the settlement had

12   actually been.

13           THE COURT:  For the moment I just want to find it.

14           MS. REEVES:  If you are asking me what are we

15   seeking?

16           THE COURT:  I just want you to tell me where it is

17   in the record for the moment.

18           MS. REEVES:  The attachment B to our motion for

19   expedited remand.

20           THE COURT:  The confusion I have got, there is two

21   Exhibits B.  I guess some of the exhibits are exhibits to

22   other exhibits.

23       All right.  So the amended motion was filed against four

24   named defendants:  United States Gypsum, Federal Mogul, T&N,

25   PLC, and Certainteed, which are jointly represented by the

8

30    1    Center for Claims Resolution.

2         As I understand the facts, there were, is it correct,

3    five defendants; that is, these four and Armstrong in the

4    original action?

5              MS. REEVES:  Actually, your Honor, there were more

6    defendants that were members of the CCR in the original action

7    National Gypsum.  The Asbestos Claims Management Trust had

8    been a member of the CCR and declared bankruptcy.

9              THE COURT:  Let me ask you --

10              MS. REEVES:  Armstrong was, yes, your Honor, named

11    in the original petition.

12              THE COURT:  Okay.  I'm not asking my question

13    clearly.

14         As of the time of the agreement to settle, who was left

9:02:30  15    in the case?

16              MS. REEVES:  Of the CCR?

17              THE COURT:  Who was left in the case as to -- well,

18    let me put it this way.

19         Are there additional defendants remaining in the case

20    after the settlement with the CCR parties?

21              MS. REEVES:  There were, yes.  The case was set for

22    trial on September the 18th and there were parties remaining

23    in the case on the trial setting date and settlements were

24    made with those parties.

25              THE COURT:  Well, right now the only parties

.00

1   remaining whose elements are in issue then are these four

2   defendants and Armstrong; is that correct?

3         MS. REEVES:  There are other parties whose

4   settlement payments are late, your Honor, but we seem to have

5   been having more progress in working something out with them

6   and so we have not yet filed with Judge Jenevein a comparable

7   motion for those other defendants, but it is my understanding

8   that all of the defendants named in the original Painter

9   action have been resolved by settlement or nonsuit.

10         THE COURT:  Well, let me put the question this way.

11     Was it contemplated by the plaintiffs that the parties

12   behind the settlement with the Center for Claims Resolution

13   were United States Gypsum, Federal Mogul, T&N, Certainteed,

14   and Armstrong?

1:04:00  15         MS. REEVES:  Your Honor, the Center for Claims

16   Resolution is not very forthcoming about how payments are made

17   and who among the CCR members are obligated when they settle

18   any particular case.  I myself do not know how they decide who

19   pays.

20     It is my general understanding that it does not matter

21   how many CCR defendants are paid, that they all contribute to

22   settlement payments, and when a release is signed, all of the

23   CCR parties are released, not just those named in the

24   petition, and not just those sued in counterclaims or

25   something of that nature.

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 106 of 133

1    So when you ask what we contemplated, the CCR is murky,

2    but we knew that they would ask for a release to be signed as

3    to all, and such a release was executed, your Honor.  In terms

4    of who made what particular --

5                THE COURT:  Okay.  I wasn't getting to that.  I

6    wasn't getting to that issue.

7        Then these parties that are listed as release parties in

8    the release, which is --

9                MS. REEVES:  Include Armstrong, your Honor.

10               THE COURT:  They include Armstrong.  Do they also

11   include parties who were not -- let me say it differently --

12   persons or entities who were not parties to your lawsuit at

13   all

14               MS. REEVES:  Yes, your Honor.

15               THE COURT:  What you're representing to me,

16   Ms. Reeves, is that you had no communication of any kind with

17   the Center for Claims Resolution as to who would be paying

18   wha.?

19               MS. REEVES:  My partner is the primary negotiator

20   for us, your Honor, but neither he nor I was told what

21   percentage any particular defendant would be paying.  And I

22   can represent that in previous conversations I have had about

23   how the CCR worked, I have been told that CCR doesn't tell how

24   that all works out.

25       Having seen the producers' agreement this morning for the

30   1  first time and learning that perhaps even what was tendered to

2  the Court is not the up to date producers' agreement, the way

3  the attachments explain the allocation is utterly unclear to

4  me and it seems that as to high value claims like this one, a

5  little bit ad hoc and not even described in the producers'

6  agreement appropriately.

7          THE COURT:  That's the first time you have seen

8  that, or some iteration of that?

9          MS. REEVES:  Yes, your Honor.

10          THE COURT:  Let me try to just cut to the chase

11  here, and if I'm missing something, by all means correct me,

12  but it's my understanding that essentially the plaintiffs'

13  position is, look, we had an agreement with CCR, the parties

14  that are alive and well that we know to be members of CCR are

:06:30   15  the parties who we have named now in connection with our

16  amended motion, we want to go before Judge Jenevein and get

17  Judge Jenevein to compel that the full payment be made, if the

18  parties that pay have a claim for contribution against

19  Armstrong, God be with them, they may go to Delaware and

20  assert it if they like?

21          MS. REEVES:  That's correct, your Honor, although I

22  think that there are other possibilities of what could happen

23  with Judge Jenevein.  I mean, in the event that he doesn't

24  decide to enter judgment for the total amount against the

25  three, I can ask for a trial setting on the underlying claim.

1    He sould enter judgment severally against the four named

2    def ndants, each of them, you know, responsible for a quarter.

3    The e are various options, none of which would directly

4    imp ct -- or even absent another action or two, and I would

5    say it would be at least two, having looked at the producers'

6    agr ement and seeing that they have to do an ABR, I think,

7    bef re they can prosecute an action, that this is far too

8    rem ved to constitute related to jurisdiction.

9        Finally, your Honor, I think it's important to note that

10    bec use there is such a lot in the record from the defendants

11    abo t the producers' agreement and how it works that really

12    was 't in the underlying pleading that your Honor looked at to

13    det rmine if there is removal jurisdiction, that your Honor

14    doe not have to get into all of the details about what's

15    goi g to happen and how it might work and what the play would

16    be nd what are the steps, because at the end of the day the

17    bes they can show with all of this is related to

18    jur sdiction, the very Wood case upon which they rely for

19    the r support that this is related to is -- says at the end of

20    the case that what -- regardless, that joint conduct was

21    ins fficient to demonstrate a core proceeding.

22        This is not a core proceeding. And so given that, even

23    if it is related to, and we can test that for the reasons your

24    Hon r outlined, your Honor must abstain. There is a state

25    cou rt proceeding that's been on file, my motion is timely for

13

30    1    you to abstain, Judge Jenevein was going to hear this action

2    on Friday when this case ensued.

3        The Celotex case that was cited by the defendants

4    absolutely says nothing about abstention except that the party

5    in that case waived their right to waive an abstention

6    argument.  I would say that the producers' agreement does not

7    provide for the sort of indemnification or any indemnification

8    such as what is at issue in the Celotex case in which a

9    finding would have triggered an automatic indemnification

10    obligation by the debtor.

11        So, Your Honor, I think you don't have to involve

12    yourself in what perhaps would be a morass of possibilities

13    and what's the nature of their agreement by looking at the

14    mandatory abstention provisions and the elements which are

:09:30   15    present here.  So I think that your Honor could rule on that

16    basis alone.

17            THE COURT:  All right.  You didn't fly all the way

18    up here for nothing, did you, Mr. Germer, you're not going to

19    let Mr. Elliston have all the fun, are you?

20            MR. GERMER:  I asked him to let me talk, but he

21    said, Germer, I have seen you in action, you better let me

22    handle this.

23            THE COURT:  Well, I have seen him in action.

24            MR. GERMER:  Your Honor, I did want to say that I do

25    appreciate very much you giving us this additional time.  As

14

1    you can see, a lot of work was done over the weekend.  We've

2    tri.d to get more information to the Court.  We appreciate

3    you. number one, giving us the time today and for letting us

4    hav. this hearing.

5              THE COURT:  That's fine.  Obviously, Mr. Elliston,

6    I'm pulling your leg.  I'm happy to hear from you.

7         Let me just say before you begin, and obviously I

8    con..inue to interrupt with questions, as is my nature.

9         I remain concerned -- having read the papers and looked

10   at .he cases, I remain concerned that this issue is at best

11   pre.ature, because I do not know what Judge Jenevein will do.

12   Thi. is, at this juncture, to me, very hypothetical.

13        I do not want that quoted back to me in the event that I

14   rem.nd you and you try to come back here again, that I invited

15   you to do that.  I'm not addressing if, as, and when I would

16   loc.: at it again.  But at this juncture I don't know that

17   Juc.ge Jenevein would conclude that Armstrong has any

18   res.ponsibility here at all.  He may.  But he may also conclude

19   tha.: there is no responsibility of Armstrong, and the only way

20   tha.: the plaintiffs can collect from Armstrong is to go file a

21   cla.im in Armstrong's bankruptcy, and clearly that would be

22   son.ething that would need to be filed in Armstrong's

23   bar.cruptcy.

24        I don't predict what Judge Jenevein would do, but this

25   no..ion that because of what the plaintiffs are doing that

15

30    1    inevitably this involves a contribution claim is based on a

2    series of assumptions that may turn out to be invalid.

3       MR. ELLISTON: Your Honor, thank you. If I could

4    address that, and actually the reason I asked Mr. Germer to

5    let me speak first was I anticipated that you would want to

6    cut to the chase and ask some questions, so I wanted to stand

7    first because I do have a little more factual background in

8    this than Mr. Germer, and hopefully we can work through this

9    and address your Honor's question.

10    The defendants, as I understand it, at the time of the

11    settlement that were members of the CCR were in fact

12    Certainteed, T&N, U.S. Gypsum, the three removing defendants,

13    and Armstrong World Industries, who we refer to as AWI.

14    That settlement was negotiated by the CCR representative

:12:30   15    on behalf of its disclosed principals, which would be those

16    four defendants.

17    And plaintiffs' counsel is correct, the CCR manages the

18    asbestos personal injury litigation for its members, it

19    negotiates the settlements. CCR was not a defendant in that

20    plaintiff case, but they negotiated the settlement on behalf

21    of those four disclosed principals at the time.

22    Now, on december 6, as your Honor knows, AWI declared

23    bankruptcy.

24       THE COURT: What is Federal Mogul?

25       MR. ELLISTON: Federal Mogul, your Honor, is not a

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 112 of 133

1  member of the CCR, but Federal Mogul purchased the assets of

2  T&N and other related companies, and so there is an allegation

3  by plaintiffs in the underlying case that Federal Mogul would

4  ultimately be responsible for T&N's liabilities.  But Federal

5  Mogul itself is not a member of the CCR.

6          So, in any event, the three members of the CCR that are

7  solvent, U.S. Gypsum, Certainteed, and T&N have tendered

8  checks to the plaintiff paying their allocated shares of the

9  settlement, which of course plaintiffs have rejected, and what

10  plaintiffs seek to do here is to have the three solvent

11  defendant members of the CCR pay the share of the insolvent

12  member, which would be Armstrong World Industries.

13          In other words, even though they don't plead it as such,

14  what they're seeking to impose is joint and several liability

15  under this settlement agreement.

16          And, your Honor, maybe -- I understand your Honor's

17  concern about this being premature, but what the CCR solvent

18  members are attempting to do is to get these matters into the

19  federal court system and get them to the bankruptcy court,

20  because this is not an isolated event, as you might imagine.

21          As we set forth in our motion, AWI is -- owes in excess

22  of $50 million for settlements that have previously been

23  negotiated, and it will involve thousands of claimants across

24  America, not just these folks, and so we believe that the

25  evidence is clear that this is related to the bankruptcy.

1        THE COURT:  Well, they're not going to be -- they

2   won t be bound in any way.  If I'm missing this, correct me,

3   but let's say that Judge Jenevein concludes that you are

4   responsible for their share.  Then -- and I left you to your

5   own devices in state court -- you would either come back here

6   and try to get it over there, or you would go there directly.

7   But Armstrong is not going to be bound by that decision by

8   Jud e Jenevein, is it?

9        MR. ELLISTON:  I agree with your Honor.

10       THE COURT:  The reason I'm asking you that,

11  Mr. Elliston, with all respect to your clients -- and I invite

12  you to correct me on this, I really do not pretend to be an

13  exp rt in this particular matter, but as I understand it, the

14  iss e of my jurisdiction here is really predicated -- my

15  pot ntial jurisdiction, because this is related to a

16  ban ruptcy, is predicated on the notion that I should not let

17  som thing untoward happen to the debtor.  Not that I should

18  loo: out for anybody in your client's position who might in

19  tur be asserting a claim against the debtor.  Because if you

20  do, that will certainly be in the bankruptcy court.

21       Now, I may be wrong, and I invite you to correct me, but

22  unl ss I'm missing something, the notion that I should be

23  sym athetic to the fact that -- and in a global sense, I am.

24  It' a question of whether I'm sympathetic to the extent that

25  it results in my exercising jurisdiction -- should I be

```
00  1    sympathetic to the fact that there is going to be a lot of
    2    litigation where all of the parties are not present in one
    3    particular matter, which certainly would be more convenient
    4    for your clients, but at the same time plaintiffs are going to
    5    be dragged up to Delaware when they are not asserting claims
    6    against Armstrong.  It would be you, your clients, who would
    7    be asserting -- I think it's fair to say contribution claims,
    8    because this is not an indemnity situation, is it, it's just a
    9    contribution claim?
    10            MR. ELLISTON:  Actually, your Honor, we believe it
    11   is an indemnity.  It's a contractual indemnity situation
    12   because of the cost-sharing arrangement and the agreement in
    13   the CCR between the parties.
    14            THE COURT:  But -- I'm not using it in the artful
:17:30  15   way I should.  It is for a percentage of the total, not for
    16   the total?
    17            MR. ELLISTON:  Correct, your Honor.
    18            THE COURT:  That's what I meant.
    19            MR. ELLISTON:  Well, your Honor, I'm not sure I can
    20   fairly say that your understanding is incorrect as to why the
    21   related-to language is there, but it is our position that if
    22   in fact the plaintiffs win, what occurs here is that -- and
    23   I'm talking about in Judge Jenevein's court.  If in fact they
    24   were to prevail and these defendants, the solvent defendants,
    25   had to step forward and pay the share of AWI, as a practical
```

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 115 of 133

1   mat er it affects the estate because the obligation of AWI to

2   the plaintiffs is wiped out.  It does put these defendants in

3   a p sition where they would have to go to Delaware to seek

4   ind mnification.

5        On the other hand, if we prevail, if the defendants

6   pre ail before Judge Jenevein below and it is determined that

7   the e are several obligations, then the AWI estate would be

8   imp cted because they would be put in a position that they

9   wou d owe their entire share and it would not be the

10  ban ruptcy court who's making that determination, who we

11  bel eve should be making the determination, but rather it

12  wou d be Judge Jenevein.

13       THE COURT:  But Ms. Reeves would have to go then to

14  Del ware -- no disrespect to Judge Jenevein, nor would the

15  sit ation be any different if it were me, as I understand it,

16  if  udge Jenevein said these checks that have been tendered by

17  you on behalf of Certainteed, T&N, U.S. Gypsum, that's all you

18  nee  to tender, so Ms. Reeves comes up short, whatever the

19  num er is, she has got to go to the bankruptcy court to

20  col ect that.  And what Judge Jenevein did isn't going to make

21  a h ll of beans of difference to the bankruptcy court.

22       If I'm correct in my understanding, that's what I started

23  wit  earlier, that Armstrong cannot be bound by that

24  det rmination, they're not there.

25       MR. ELLISTON:  I agree with your Honor.  It's the

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 116 of 133

1    you: Honor can imagine, there is a lot of dispute between the

2    par:ies as to values for each of the individual cases and who

3    wou.d owe what under each of those individual cases.  And I

4    don t want to go too deep there, because I'll be frank with

5    you: Honor, I don't know what would occur in front of Judge

6    Jen vein with regard to motions and defenses, but I can see

7    whe:e certainly in this particular case the administration of

8    the estate of AWI in front of the bankruptcy court could be

9    aff cted.  Certainly understanding that we're not just talking

10   abo t this case or these ten cases, but we're talking about

11   thousands of cases nationwide.  What your Honor does here, and

12   wha: we anticipate other federal court judges will do here,

13   wil. be extremely important and will have an impact upon the

14   est te of AWI.

15              THE COURT:  Let me say that back to you,

16   Mr. Elliston.  I just want to make sure I'm understanding

17   tha .

18        So with respect to your third scenario, what you're

19   env sioning here is that Armstrong might think this is a good

20   dea  and it would rather pay its share, the bankruptcy

21   not ithstanding, but Judge Jenevein would determine that the

22   agr ement is unenforceable on its terms and set it aside

23   but -- I can't take judicial notice of this, but just on a

24   vis eral level, I have to assume that Armstrong knows

25   som thing about what's happening here.  They're not here.  But

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 117 of 133

30    1    presumably based on the agreement the Center has had to advise

2    Armstrong about the goings on here.

3        Is it fair for me to assume that?  You're asking me to

4    assume that Armstrong is sort of looking over these

5    proceedings and really wanting to enforce the settlement

6    agreement, but not ponying up the money in effect.

7            MR. ELLISTON:  No, Your Honor, I did not intend to

8    indicate that.  And I think your Honor should not assume that

9    AWI is aware of what's transpiring here.  Once they went into

10    bankruptcy court and sought the bankruptcy protection -- and

11    I'm going to speak a little bit out of turn myself -- it is my

12    assumption, your Honor, that they were suspended or terminated

13    as part of the CCR.

14        In any event, your Honor, I believe that all actions

):23:30    15    against AWI would be stayed under the bankruptcy court, so

16    therefore I would not anticipate that they are watching or

17    overseeing this.

18            THE COURT:  I'm not making myself clear, and it was

19    my use of language, not the way you heard it.  Let me step

20    back a minute.

21        What I meant to say, Mr. Elliston, was this.

22        It would not be a hasty assumption on my part that in

23    September, which is about two and a half months before the

24    bankruptcy was filed based on the information I have before

25    me, that Armstrong, which indisputably was a member of CCR --

1    MR. ELLISTON:  Correct.

2         THE COURT:  -- would know that an agreement was

3    struck with the plaintiff, and whatever the deal was with

4    respect to Armstrong's participation, it knew that.

5         MR. ELLISTON:  Correct, they did.

6         THE COURT:  So when it went into bankruptcy, even

7    though obviously all the actions are stayed, Armstrong would

8    know what deal it had.

9         MR. ELLISTON:  Correct.

10        THE COURT:  So that if it considered it a good deal,

11   it would have the knowledge to -- if those in charge of the

12   administration of the estate wanted to, to make contact with

13   the parties and say we're in bankruptcy, but this is a sweet

14   deal here, we still want to do it, which is in affect what you

15   are asking me to protect it from.  And -- protect it from

16   losing that deal, and the point I was making, I didn't mean to

17   be as specific as my language indicated, I don't mean that the

18   debtor is necessarily aware of the fact that we have a hearing

19   today, but the debtor would have known whether it eventually

20   was evicted -- or tossed out or whatever terms of art might be

21   applicable -- from CCR, it would know what agreement it had

22   made prior to the bankruptcy.  And if it thought that was such

23   a great deal, there are parties that it could contact to say

24   don't leave us out, we want to stay a part of that agreement.

25        MR. ELLISTON:  Without a doubt, your Honor, AWI

30   1   would have been aware of the settlement and would have been in

2   a position to make the determination whether to fund the

3   outstanding settlements or not fund the outstanding

4   settlements.  And as we have indicated, on a motion they have

5   not funded those outstanding settlements, rather choosing to

6   go into the bankruptcy court.

7       As to what authority they might have or what ability they

8   might have to fund these settlements separate and apart from

9   the -- or as part of the bankruptcy action, I would profess or

10   proclaim my ignorance, but certainly they were aware of the

11   underlying agreement.

12       THE COURT:  All right.  Does the plaintiff -- I want

13   to make sure I know what facts are not disputed.

14       Is it known at the time of the settlement who the CCR

:26:30   15   members were; that is, who of the defendants here were in CCR?

16       MR. ELLISTON:  Yes, your Honor.

17       THE COURT:  So -- again, if I'm misstating this,

18   Mr. Elliston, I advise you that you should correct me.  I

19   really am just trying to make sure I understand the facts.

20       So in September CCR would know and the plaintiffs would

21   know that the defendants who were members of CCR were

22   Armstrong, Gypsum, Certainteed, and T&N?

23       MR. ELLISTON:  That were being sued in that

24   particular case.

25       THE COURT:  In the Painter litigation?

CVisPDF - www.fixvisi.com

25

1        MR. ELLISTON:  Yes, ma'am.

2        THE COURT:  And the contribution of those four

3    entities to the settlement would not have been known to the

4    plaintiffs?

5        MR. ELLISTON:  Would not have been known to

6    plaintiffs, that's correct.

7        THE COURT:  And the plaintiffs were required to

8    execute settlements -- excuse me -- releases of all of those

9    parties and others as part of the settlement?

10       MR. ELLISTON:  That is also correct, your Honor.

11       THE COURT:  All right.  And there was no

12   communication from CCR or any of the defendant separately to

13   the plaintiffs describing what would happen in the event of a

14   bankruptcy or some other kind of insolvency?

15       MR. ELLISTON:  I cannot agree to that.  I cannot

16   dispute it, but I cannot agree to it.  And if I may explain.

17       The negotiations do not occur between my law firm and

18   plaintiffs' counsel.  They occur between an individual at the

19   CCR in Princeton and plaintiffs' counsel.

20       There have been discussions between CCR and numerous

21   plaintiffs' counsel -- and I would anticipate this particular

22   plaintiffs' counsel -- concerning what happens, or what would

23   happen if one of the members of the CCR became insolvent, or

24   if one of the members of the CCR were to leave.

25       THE COURT:  Let me ask it differently then.

1      Based on the documents before me, including the documents

2  that are the basis for the removal, I don't have anything that

3  tells me that such a discussion occurred.  I don't have

4  anything referring to that at all.

5          MR. ELLISTON:  I would not expect your Honor to have

6  that  no.

7          THE COURT:  So I don't know whether that discussion

8  occurred or not, but on the face of it it just says we're

9  setting ten cases for                    we expect releases,

10  here s a form of release and here's the docket number and the

11  CCR number for all of these parties for whom you are settling.

12  That s essentially what I have before me about the settlement?

13          MR. ELLISTON:  I believe that's correct, your Honor.

14      If I may address your specific point, I will agree with

15  your Honor that none of the documentation before you would

16  allow you to determine whether that communication occurred

17  with regard to these specific cases.

18          THE COURT:  All right.  Go ahead then, Mr. Elliston.

19  I led you down the long road here.  If you can get back to

20  where you were.

21          MR. ELLISTON:  And, your Honor, I think we have

22  covered most of the points here, but as I have indicated, this

23  is not an isolated event.  We anticipate that this will be a

24  nationwide occurrence in light of the number of cases and the

25  amount of money that's involved.  And clearly whatever

1   determination is made concerning whether these settlement

2   obligations are joint and several or several will dramatically

3   impact the estate of AWI.  And we believe under the case law

4   of the Wood case that in fact when you're addressing the

5   situation where you have the obligations, an obligor a debtor

6   and a co-obligor that in fact this would be a circumstance

7   where a claim against the co-obligor would be related to the

8   bankruptcy action and therefore should in fact go to federal

9   court because it is related.

10       Now, as your Honor knows, we filed a motion to transfer.

11  In fairness to plaintiffs' counsel, we faxed or had that

12  hand-delivered this morning, and I don't know if they

13  anticipated having it heard, but they have not had a chance to

14  respond to that.

15       What I came prepared to do today, your Honor, is just to

16  address your jurisdiction, and we believe you do have the

17  jurisdiction because it is conceivably -- that it could

18  conceivably affect the estate of Armstrong.

19       What we're talking about here is not a contribution claim

20  in an underlying mass tort case.  What we're talking about

21  here is joint conduct, a joint obligation under a settlement

22  agreement.  And under the Wood case we believe in fact it is

23  related to bankruptcy, and I have gone through the various

24  reasons -- scenarios in front to Judge Jenevein that we

25  believe would indicate that it could in fact affect the

0

1   estate.

2          Just let me briefly address the mandatory abstention and

3   then I will be done.

4          We believe it is part of a core proceeding, because it

5   does affect the creditor-debtor relationship, and it does

6   affect the administration of the estate.

7          If your Honor looks at the press release concerning the

8   AWI bankruptcy, this bankruptcy was caused in large part

9   because of this ongoing asbestos litigation and the potential

10  liability from that.  And we believe that it is critical that

11  the bankruptcy court, one court, deal with these issues on a

12  nationwide basis.

13         Your Honor is correct, you could send this back down to

14  Judge Jenevein and he could make a ruling and we could take it

1:32:30   15  up through the state court system.  And yet it's our position,

16  your Honor, that it makes imminently more sense that your

17  Honor maintain jurisdiction of this, that it go to the

18  bankruptcy court rather than having various state courts and

19  county courts around this state and around this country make

20  differing determinations, go up through the appellate process

21  on numerous occasions.  Rather it makes more sense to go to

22  the bankruptcy court and the federal court system to take

23  jurisdiction of this.

24         And, your Honor, unless you have more questions, that's

25  our presentation.

```
 10   1            THE COURT:  Okay.  Thank you very much,
      2   Mr. Elliston.
      3            MR. GERMER:  Your Honor, I don't how --
      4            THE COURT:  That's fine, Mr. Germer.
      5            MR. GERMER:  I would like to add one fact.  Thank
      6   you.
      7        You've asked several times about the underlying case, and
      8   Kay can help more than I can, but one thing that's interesting
      9   here that I don't think has been brought out, this group of
     10   plaintiffs, of ten plaintiffs or so that are going to get
     11   $6 million and have been offered, in fact, that money less the
     12   Armstrong portion, these are not plaintiffs in this case, this
     13   Painter case.  Only the Painters are plaintiffs in this case.
     14        What they have done to get to this            they're
 :33:30 15   now asking for in the amended motion is lumped together some
     16   cases, I think, from Nueces County --
     17            THE COURT:  I understand that, and whether Judge
     18   Jenevein would consider himself empowered to enforce a
     19   settlement for $       when the amended motion to compel
     20   and the original motion to compel both refer to a $
     21   settlement -- well, the original one does, the amended one
     22   refers to the entire amount, so that's an issue that would be
     23   for Judge Jenevein to determine.
     24        I don't purport to have an opinion about that issue, but
     25   I understand the point.  That's why I asked the question.
```

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 125 of 133

```
     30    1            MR. GERMER:  Thank you.  Well, you were ahead of me.

           2     I just wanted to be sure that you did understand that, because

           3     I could see you were focusing on that.

           4            Thank you.

           5            MS. REEVES:  Your Honor, briefly, a couple of

           6     things.

           7            First, I need to correct a factual misstatement

           8     Mr. Elliston made.  He said that the plaintiffs have been

           9     tendered the settlement funds in the amount equal to the share

          10     owed by the CCR removing defendants here.

          11            There is no showing that that has been made.  We don't

          12     know what share they allocated to Armstrong.  There has never

          13     been any demonstration of how that was done in the first

          14     place, number one.

:35:00    15            Number two, what the plaintiffs were given was a check

          16     that said if you negotiate this check, you agree that it's in

          17     full accord and satisfaction, and that extinguishes any rights

          18     I have against any of the CCR members other than these

          19     removing defendants.  And that is not a check that I have the

          20     authority from my clients to accept, and certainly I would

          21     argue and will argue to Judge Jenevein that it is not tender

          22     of the settlement of their portion of the settlement amount.

          23            Second, as to the disclosed principal, it's not really

          24     an, issue but I don't want there to be any argument that I

          25     waived the ability to complain that there were only four
```

1   disclosed principals.  The principals -- the entities upon

2   which the CCR defendants negotiate are all of the CCR

3   entities, these other people in the release, so I speak

4   necessarily for principals at issue here, everything that

5   Mr. Elliston said, every argument that he made, puts this case

6   squarely within the reach of Pacor and its progeny.  He said

7   nothing to distinguish this case from a situation in which a

8   defendant has a right of contribution.

9      This whole argument was there is going to be joint and

10  several liability, any finding that might compel us to pay

11  this money necessarily is a finding that liability is joint

12  and several.  That's the same thing that's at issue in the

13  contribution claim.  That was the same thing that was at issue

14  in Pacor, it's the same thing that was at issue in the

15  asbestos cases cited in my brief where other courts have held

16  that this is not related to jurisdiction and it's the same

17  sort of claim that the Walker versus Cadle court, Fifth

18  Circuit 1995, said this is the sort of third-party complaint

19  that is simply too intenuated to constitute related to

20  jurisdiction.

21      It's certainly -- I mean, if Mr. Elliston is making the

22  argument that there is something unique about a CCR defendant

23  because of the producers' agreement, it certainly wasn't

24  unique enough for the bankruptcy court to take notice of it

25  when issuing its stay.  It certainly could have issued in an

1  appropriate case a section 105 discretionary stay.  It's done

2  that in the Babcock and Wilcox bankruptcy.  It extends the

3  stay to nondebtor parties where there is the sort of

4  interconnection that Mr. Elliston is trying to establish .

5  exists here, but does not, your Honor.  The kind of

6  interconnection that the Wood court was talking about is not

7  present here.  This is -- on all fours analogous to what has

8  been found time after time not to be related to.

9        And, again, there has been no showing that this is in any

10  way a core proceeding.  And under the very holding of Wood,

11  the last paragraph of the opinion says, even in a joint

12  conduct situation, which this is not, the downstream

13  consequences against the debtor estate are too speculative to

14  constitute a core proceeding.  The right claim does not arise

15  out of the bankruptcy code and the right claim does exist

16  outside of the bankruptcy context.  Those are two prongs of

17  the test for a core proceeding enunciated in the Fifth Circuit

18  in the Wood case.  Those prongs are not met here, and so this

19  is a mandatory abstention situation even if your Honor finds

20  related to jurisdiction.

21        THE COURT:  All right.  I'm going to be in recess

22  for 15 minutes.  I'll be back and announce my decision from

23  the bench.

24        (Brief recess.)

25        THE COURT:  All right.  Counsel, thank you for a

Case 1:01-cv-00180  Document 7  Filed in TXSD on 10/31/2001  Page 128 of 133

1   very fine informative argument, which I appreciate.  I have

2   reviewed the materials, as I had before we began the hearing,

3   and I have concluded that the subject issue is not a core

4   proceeding and I conclude it is not related to -- in the sense

5   that is as that phrase is used under the bankruptcy -- under

6   the bankruptcy code and, therefore, I conclude that I do not

7   have subject matter jurisdiction.

8        In the alternative, if I did have subject matter

9   jurisdiction, I believe I have discretion not to exercise, and

10  I determine not to exercise it in this case.

11       It appears to me that the matter is properly before Judge

12  Jennvein and should be determined by him depending on what

13  scenario of those outlined by Mr. Elliston or others in the

14  scenarios that I can think of develop.  It may be appropriate

15  for one or more of the parties to take action in the Court

16  where the bankruptcy against Armstrong is pending, but I do

17  not believe that there is a sufficient relationship for the

18  Court to conclude that it has subject matter jurisdiction and,

19  therefore, I decline to conclude otherwise.

20       In light of that determination, the motion to transfer

21  that has been filed by the defendants is rendered moot by my

22  decision, and consequently I will not determine that.

23       Is there anything further that I need to decide today, or

24  any other finding that the parties wish me to make?

25       Anything, Ms. Reeves?

34

1          MS. REEVES:  No, your Honor.  Thank you.

2          THE COURT:  All right.  Mr. Elliston?

3          MR. ELLISTON:  In light of your ruling, no, ma'am.

4          THE COURT:  Then the -- so that the record is clear,

5     the Court has granted the plaintiffs' motion for remand, and

6     the case will be remanded.

7          As I have indicated in our conference call last week, I

8     did advise Judge Jenevein that we were having the hearing

9     today.  I had told him that the hearing was at 11:30.  I did

10    not advise him that we moved the hearing to this afternoon.  I

11    told him that either my office or one of the parties would

12    advise him of the outcome of our hearing here.  So I would

13    appreciate if you, Ms. Reeves, if you want to use the phone in

14    my conference room to do that, you may do so.

15         MS. REEVES:  Thank you, your Honor.

16         MR. ERVOES:  All rise.

17              ---oOo---

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T E:

3

4          I, P. Sue Engledow RPR/CSR, certify that the foregoing is

5     a transcript from the record of the proceedings in the

6     foregoing entitled matter.

7          I further certify that the transcript fees format comply

8     with those prescribed by the Court and the Judicial Conference

9     of the United States.

10         This the 19th day of December, 2000.

11

12

13

14

15                              P. SUE ENGLEDOW RPR/CSR No. 1170
                                Official Court Reporter
16                              The Northern District of Texas
                                        Dallas Division

17

18

19

20    My CSR license expires:  December 31, 2001

21    Business address:  P.O. Box 1247
                         Red Oak, Texas 75154-1247
22
      Telephone Number:  214/753-2325
23

24

25

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED

JAN 30 2001

G. PATRICK MURPHY
DISTRICT JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS, ILLINOIS

HAROLD BIERBAUM, et al.,              )
                                      )
                Plaintiffs,           )
                                      )
vs.                                   )     CIVIL NO. 00-977-GPM
                                      )
ARMSTRONG WORLD INDUSTRIES,           )
INC., AMCHEM PRODUCTS, INC.,          )
T&N PLC, and UNITED STATES            )
GYPSUM COMPANY,                       )
                                      )
                Defendants.           )

## O R D E R

**MURPHY, Chief District Judge:**

This matter was set for a hearing today on Plaintiffs' motion to remand (Doc. 11). Last week,

the parties filed a "stipulation of parties on motion of plaintiffs to remand" (Doc. 13) in which the

parties agreed that the action should be remanded, and Plaintiffs withdrew their request for attorneys'

fees and costs.

Accordingly, and for good cause shown, the motion to remand (Doc. 11) is **GRANTED**, and

this action is hereby **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison

County, Illinois, pursuant to 28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

DATED this _30th_ day of _January_ , 2001.

G. PATRICK MURPHY
Chief United States District Judge

17


EXHIBIT
H

Case 1:01-cv-00180   Document 7   Filed in TXSD on 10/31/2001   Page 133 of 133

30

1    thir d scenario -- the third scenario would be that Judge

2    Jenevein would rescind the contract for a number of reasons,

3    it's not specific enough, it's not specific to the Painters or

4    to t he amount that would be owed to the Painters, that they

5    would rescind the contract, then you would have AWI put in a

6    posi tion where they have an unliquidated claim, an indefinite

7    clai n against them that would be reinstated here in the state

8    cour t.  When in fact the bankruptcy estate might prefer to

9    have it remain a liquidated claim, and the bankruptcy court

10   make that determination there.

11        So in fact Judge Jenevein could make a determination that

12   would impact the estate.  Not because he's simply saying you

13   don t owe it, defendants, you have to go seek indemnity, or

14   you do owe your several share and the bankruptcy court could

1:20:30    15   say well, we don't care what you say, Judge Jenevein.  But

16   the third alternative is the contract could be rescinded for a

17   numb er of reasons.

18             THE COURT:  The settlement contract?  Is that what

19   you re referring to?

20             MR. ELLISTON:  Correct.

21             THE COURT:  And --

22             MR. ELLISTON:  And the determination there, your

23   Hon r, because if -- you have seen the letter agreement, it's

24   not specific as to the Painters, there's not separate amounts

25   for any of the defendants or the plaintiffs.  And, of course,